RUMRELL *v.* MINGUS.

1. EASEMENTS—CONSTRUCTION OF GRANTS.

> A trial judge who is presented with the problem of interpreting instruments relative to easements, executed by parties now deceased, should, whenever the testimony so connects with the time of writing that he may safely do so, place himself in the position of the deceased grantor and examine together and as one the writing and the physical characteristics of that which the writing was intended to affect.

2. EASEMENTS—ACCESS FROM GARAGE TO PUBLIC STREET.

> Easement 10' wide over westerly portion of appellants' lots and easterly portion of adjacent lots which provided sole means of access to street from garage at rear of lots north of the servient estates *held*, established by way of reservation and grants in conveyances presented in suit to establish such rights.

3. SAME—COVENANTS—WARRANTY DEEDS.

> Purchasers of property who were put upon notice of an easement along the west side of their property for the access of owners of property to the north to the public street on the south by conveyances of record, are relegated for relief to their grantors under warranty deed rather than extinction of the easement for the benefit of plaintiffs.

Appeal from Bay; Quinn (Timothy C.), J., presiding. Submitted October 17, 1957. (Docket No. 33, Calendar No. 47,146.) Decided December 24, 1957. Rehearing denied March 4, 1958.

Bill by John E. Rumrell, Anna Rumrell and Virgil O'Dell against Elsie M. Mingus, Maxine Cliff, and Garber Buick of Bay City, Inc., a corporation, to establish their rights in private driveway. City of Bay City, a municipal corporation, intervened. Decree for plaintiffs. Individual defendants appealed. Affirmed.

*Karl K. Leibrand,* for plaintiffs.

*F. Norman Higgs* (*Clark & Henry,* of counsel on application for rehearing), for defendants Mingus and Cliff.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Deeds § 168 *et seq.*
[2] 17A Am Jur, Easements § 29 *et seq.*
[3] 17A Am Jur, Easements § 158.

BLACK, J. The question in this case is whether the chancellor was right in decreeing in favor of plaintiffs a permanent easement, for vehicular or "driveway" purposes (and incidental pedestrian use), over (a) the west 4.09 feet of premises owned by defendants Mingus and Cliff and (b) the east 5.91 feet of adjacent premises owned by defendant Garber Buick of Bay City.

Three separately-owned parcels of realty are contentiously involved. These parcels, situated in close proximity to Bay City's business district, are designated throughout the record as "309 Adams," "311 Adams" and "311 Tenth." Each parcel for many years has been utilized for residence purposes and each of the houses standing thereon is quite old. Plaintiff Anna Rumrell is record owner of 309 Adams. Plaintiff Virgil O'Dell is executory purchaser, from plaintiff Anna Rumrell, of 309 Adams. Plaintiffs John E. and Anna Rumrell are owners of 311 Adams. 309 Adams and 311 Adams make up the dominant estates as adjudged below. Defendants Mingus and Cliff are owners of 311 Tenth. 311 Tenth, plus the mentioned adjacent premises owned by defendant Garber Buick, make up the servient estate as adjudged in the chancellor's decree. Defendants Mingus and Cliff have appealed from such decree. Defendant Garber Buick has not.

Sketched exhibit 1 in the case (appearing at margin) is a helpful map of the respective parcels. Scrutiny thereof discloses—the north half of the platted alley having long since been duly vacated—that the claimed dominant owners and their predecessors have had no means of vehicular ingress and egress, from the rear of their lots to a public street, other than by the way as claimed by them.

*First:* Was the easement as decreed created by grant? The chancellor found affirmative answer in an ambiguously-worded deed of 309 Adams, made

Sketch from Exhibit 1

South Half of Block 107, Lower Saginaw

in 1921 by the then owners (Josephus and Rachael Martin) of all 3 of these residence parcels. We agree with the chancellor in such regard,* yet are inclined to view that the presently summarized additional conveyances in the respective chains of title should be considered, with the mentioned conveyance of 1921, as providing forceful support of that which was decreed below. Turning first to the deed of 1921: By such deed Mr. and Mrs. Martin conveyed 309 Adams street "Reserving a right of driveway over and upon the west 16 feet of said piece of land for the benefit and use of the owners of lots 4, 5 and 6, Block 107." Cloudy and uncertain meaning of this language of reservation and creation becomes apparent when one attempts to apply it to the physical situation then and now existent. This brings us to such additional conveyances, 4 in number.

1. Earlier, and in 1869, one Mary Jane McCormick acquired title to substantially all of the respective premises identified now as 309 Adams, 311 Adams, and 311 Tenth. The deed contained this language: "together with the right-of-way through an alley to be located on those parts of lots 4, 5 and 6 not herein before described, such alley to be 16 feet wide."

2. In 1889 Mary J. Bassett (formerly said Mary Jane McCormick) conveyed into the chain of title the premises so acquired by her in 1869. The deed contained the same language of conveyance of a "right-of-way" as quoted from the mentioned deed of 1869.

3. In 1924 the State Bank of Linwood (grantee of the grantee named in the mentioned deed of 1921)

---

* To this opinion we have attached, in the form of an appendix, the decisive portion of the chancellor's finding of facts and conclusion from the deed of 1921. We approve and adopt such finding and conclusion.

conveyed 309 Adams into the chain of title. This deed contained the same language—"reserving a right of driveway"— as quoted from the mentioned deed of 1921 (Curiously, in this deed, the word probably intended to be "owners" is spelled "annuns").

4. An additional deed, made of 309 Adams in 1936, contained the same language, "reserving a right of driveway," as contained in the deed of 1924.

The task of a judge, when in the midst of opposing demands he is called upon to apply as well as interpret the written equivocacy of those who have long since passed beyond, proceeds at risk of mistake. And, when an obscure writing of the past is to be held as having created, preserved, or destroyed, what at the time were visibly utilized rights in land, the chances of error become greater when the interpreter confines his appraisal to the writing itself. He should, whenever the testimonial record so connects with the time of writing that he may safely do so, place himself in the position of the deceased grantor or grantors and, standing there, examine together and as one the writing and the physical characteristics of that which the writing was intended to affect. Since the record before us is complete and free from doubt in such regard, we turn on bid of this valued doctrine to the year 1921 for that view of the realty, and the available utility thereof, common grantors Josephus F. and Rachael Martin had as they contemplated sale of 309 Adams.

Mr. Martin had an automobile "from 1909 to 1925 or so" which he kept in a barn "on the rear of 311 Adams street." He drove to and from the barn and into Tenth street using "a driveway west of 311 Tenth street." The houses theretofore built at 309 Adams, 311 Adams and 311 Tenth, and the then encroachment of the Newkirk barn on the platted alley (see appendix), prevented ingress and egress from the Martins' said barn to a public way, other than

by following substantially the "alley" previous grantors had apparently created and perpetuated by recorded deeds. What purpose, then, can we impute to Mr. and Mrs. Martin when they conveyed 309 Adams—in 1921—with reservation of the quoted "right of driveway"? That the reservation be limited to use of the west 16 feet of 309 Adams? We say "no" since a "yes" answer would leave us in the unbelievable position of having ascribed to the Martins intention of establishing or reserving a "right of driveway," from the doorway of their backyard barn to the backyard of a neighboring narrow lot, all in a space measuring 16 feet by 35 feet with no outlet therefrom. We prefer to look at the conveyances of 1921 in the light of previous conveyances and the proven need for continued use by Mr. and Mrs. Martin of a way south to Tenth street from their barn. So viewed we find that the Martins intended to and did effectively create—if indeed their predecessors had not previously done so—an easement extending south along and upon the west end of the platted lots, from the rear of 311 Adams to Tenth street, "for the benefit and use of the owners of lots 4, 5 and 6, Block 107."

*Second:* It is said that defendants Mingus and Cliff (their acquisition of 311 Tenth occurred in 1952) were good-faith purchasers and that they are entitled to protection of the recording laws. The trouble with this contention is that the mentioned deeds of 1869, 1889, 1921, 1924 and 1936—granting that inept and contradictory language was employed, as to the "right of driveway," by the scrivener or scriveners of the last 3—did give notice of record that certain grantors in the chain of title had created certain easement rights for the apparent benefit of the owners (or "annuns") of platted lots 4, 5 and 6. 311 Tenth is a part of said lots 5 and 6. The situation so far as notice is concerned fairly called for in-

quiry—prior to purchase—of respective owners or possessors of other parcels lying within the 3 platted lots. Instead, defendants Mingus and Cliff purchased absent such inquiry and in legal reliance on covenants of warranty contained in the deed by which they claim. They had a right to do this, of course, yet pursuit of such course leaves them with remedy on such covenants rather than right to extinguish that which once existed of record and—as equity holds—still survives. In such connection we note from the record that defendants Mingus and Cliff have given to their grantors due notice to defend the present suit.

Affirmed. Costs to plaintiffs against defendants Mingus and Cliff.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and CARR, JJ., concurred.

## APPENDIX

(Connected portion of chancellor's opinion.)

"In 1901, Josephus Martin was the owner of the east 92 feet of Lots 4, 5 and 6; there were 3 houses on this land: 311 Tenth street (the Martin home and not involved in this litigation), 309 Adams (O'Dell property) which was immediately north of and adjacent to the Martin home, 311 Adams (Rumrell property) which was immediately north of and adjacent to O'Dell property. There was a barn on the rear of 311 Adams, used by Martin, and there was a drive over the westerly part of lots 4, 5 and 6 leading from Tenth street to this barn. Part of this drive was probably part of the platted alley, but due to the encroachment of the Newkirk barn into the alley near Tenth street, the opening into Tenth street was somewhat to the east of the platted alley. Sometime after

1901, Martin built 311 Tenth street (Mingus and Cliff property) as a tenant house. In 1921, Martin sold 309 Adams reserving a right of driveway over the west 16 feet thereof for the 'benefit and use of lots 4, 5 and 6,' the property he retained. The only possible purpose for this reservation was for maintaining the use of the driveway then existing between Tenth street and the barn at the rear of 311 Adams. This created an easement of way over 309 Adams appurtenant to lots 4, 5 and 6. In 1923, Martin sold 311 Adams and in 1925, a double cement block garage was erected thereon about on the site of the old barn. This garage was reached from Tenth street by using the same drive Martin used to his barn, and this drive was used frequently from 1925 to 1952 by owners and occupants of the 309 and 311 Adams property, and by renters of the garage at the rear of 311 Adams, and by delivery trucks. These facts strengthen the conclusion that the easement appurtenant created by the reservation above referred to was intended as such by Martin and that it passed with conveyance of part of the dominant estate, *viz.*: 311 Adams. The easement of way over 309 Adams is meaningless without access to Tenth street, and the use of the way by Martin and others after its reservation in 1921 as well as the existence of the way for many years prior to 1921 leads this court to conclude that Martin intended a way to be reserved over lots 4, 5 and 6 for the benefit of all of said lots."