## AALSBURG *v.* CASHION

1. BOUNDARIES—NAVIGABLE WATERS—RIPARIAN PROPERTY—EQUITY.

Determination of the boundaries of riparian owners on a substantially round inland navigable body of water requires that the chancellor below and chancellors on appeal determine the two points of intersection of each riparian's side boundaries with the shoreline of the lake, then, the ascertainment made, the subaqueous portion of each riparian's property is legally divided from the subaqueous portion of each adjacent riparian's property by drawing straight lines from the two ascertained points to "the imaginary center point" of the lake by which the shoreline between the two ascertained points forms the sometimes undulating base of a triangle, the apex of which is the center of the lake and the sides of it provide the subaqueous boundaries.

2. EQUITY—INSTRUMENTS.

A judge of a court of equity, when called upon to determine property rights from instruments prepared and executed by persons long since dead or unknown, should, whenever the testimonial record so connects with the time of writing that he may safely do so, place himself in the position of the deceased grantor or grantors and, standing there, examine together and as one the writing and the physical characteristics of that which the writing was intended to affect.

3. EVIDENCE—PRESUMPTION OF CONTINUANCE.

Once things are proved to have existed in a particular state, they are presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters § 464.
[2] 27 Am Jur 2d, Equity §§ 62, 127.
[3] 29 Am Jur 2d, Evidence § 237.

Appeal from Court of Appeals, Division 3, McGregor, P. J., and Holbrook and C. Kaufman, JJ., affirming in part, reversing in part, and remanding for further proceedings Kent, Stuart Hoffius, J. Submitted October 6, 1970. (Nos. 13, 14 October Term 1970, Docket Nos. 52,322, 52,335.) Decided November 12, 1970.

14 Mich App 91 affirmed in part and vacated in part.

Complaint by Joe Theodore Aalsburg and Margaret June Aalsburg against William R. Cashion, Marion L. Cashion, Charles B. Barnes, and Linda Barnes to determine rights in accreted lands. Third-party complaint by Charles B. Barnes and Linda Barnes against James D. MacGregor and Louise MacGregor, to determine rights in accreted lands. Judgment determining that common boundary lines were to be extended over the remaining accreted lands at angles running to the imaginary center point of the lake. Plaintiffs appealed to the Court of Appeals. Affirmed in part, reversed in part, and remanded for further proceedings. Defendants appeal. Affirmed in part, vacated in part, and remanded for entry of judgment in accordance with opinion.

*Dunn & Dunn,* for plaintiffs.

*Vander Veen, Freihofer & Cook* (by *Donald F. Oosterhouse*), for defendants.

*Varnum, Riddering, Wierengo & Christenson* (by *Peter Armstrong*), for third-party defendants.

PER CURIAM. For this factually complicated case the respective findings and conclusions of the trial

judge and of Division 3 appear comprehensively in the opinion next below (*Aalsburg* v. *Cashion* [1968], 14 Mich App 91). There is no need for repetition or supplementation thereof beyond observation (a) that the sketch appearing at page 93 of the reported opinion and its detailed adjunct, referring to composite Exhibits 14 and 15, have been most helpful in bringing to us a precise understanding of the main issue,[1] and (b) that a second survey, made in 1936 by the Kent County surveyor's office, depicts the shoreline of Kent County's Silver Lake in the same position—*vis-a-vis* the premises of these contending parties—as does the sketch-designated "1916 Shoreline (Survey)." We regard the two surveys and their identity with each other as controlling of the stated main issue. As we shall see this view of the proof will not alter to substantial degree the result reached in the circuit court, for the 1942 and 1916 shorelines thus sketched are not very far apart as they intersect the extended north and south lines of the Barnes' lot.

At the outset it cannot be too strongly emphasized that but three pairs of riparian owners contend here. Others who might well have been joined as parties are absent. Accordingly, our aim *de novo* must be that of determining, as among the MacGregors, the Barneses and the Aalsburgs only, the rightful northerly and southerly boundaries of the easterly portion of the middle tract. That tract is owned of record by defendants Cashion and is under executory purchase by defendants Barnes. Our determination thus made will neither adjudicate nor prejudice the legal rights of riparians whose property lies either to the north of that of the MacGregors or south-southeasterly of that of the Aalsburgs.

---

[1] That issue is the descriptive intent of grantor Weller when he proceeded to execute and record the riparian deed of 1925.

Ascertainment of the rule of law applicable to determination of the designated boundaries of these riparians presents no difficulty. Silver Lake is an inland navigable body of water. It is *round* or substantially so. The difficulty arises when judges undertake to apply the rule to the constantly changing shorelines of most inland lakes. The rule requires that the chancellor below and the chancellors on appeal determine the two points of intersection of each riparian's side boundaries with the shoreline of the lake. Then, the ascertainment made, the subaqueous portion of each riparian's property is legally divided from the subaqueous portion of each adjacent riparian's property by drawing straight lines from the two ascertained points to what this record terms "the imaginary center point" of the lake.[2] Thus the shoreline between the two ascertained points forms the sometimes undulating base of a triangle. The apex of that triangle is the center of the lake. The sides of it provide the subaqueous boundary or boundaries in question.

We continue to refer to the contending parties as the MacGregors, the Barneses and the Aalsburgs. Both as to their respective lots as designated by the sketch and the fee of the land lying lakeward thereof, all three pairs of parties claim under the original riparian owner of the entire area, one Howard M. Weller.

Weller originally prepared what is known in the record as "Howard M. Weller's unrecorded plat of Silver Lake Resort." We assume from Exhibit 5, which we shall consider further, that this was done

---

[2] For the authorities see the opinion of *Weisenburger* v. *Kirkwood* (1967), 7 Mich App at 291. 56 Am Jur, Waters, § 464, pp 877, 878 states the rule succinctly:

"Where the shores of the lake are comparatively even and round, the boundary lines may be drawn from the shore to the center of the body of water."

in the summer of 1916. The plat extended some 1,300 feet around the southwesterly portion of Silver Lake. None of the lots platted, those of the present MacGregors, Barneses and Aalsburgs included, extended to the shore of the lake.

Weller and wife, and after her death Weller unmarried, conveyed away most of the platted lots. Then it was discovered that previous conveyancing left the respective lot owners without riparian rights. Weller undertook to correct the situation by making and recording his self-explaining deed of January 15, 1925. For the complete contextual essence of that deed see the appendix hereto.[3]

At this stage the rightful position of a court of equity, when that court is called upon to determine property rights from instruments prepared and executed by persons long since dead or unknown, will bear repeating from our 1957 decision of *Rumrell* v. *Mingus,* 350 Mich 571, 575:

"The task of a judge, when in the midst of opposing demands he is called upon to apply as well as interpret the written equivocacy of those who have long since passed beyond, proceeds at risk of mistake. And, when an obscure writing of the past is to be held as having created, preserved, or destroyed, what at the time were visibly utilized rights in land, the chances of error become greater when the interpreter confines his appraisal to the writing itself. He should, whenever the testimonial record so connects with the time of writing that he may safely do

---

[3] By the deed Weller declared:

"It being the intent of said Howard M. Weller to hereby grant, bargain, sell and convey to each of the present respective owners of said lots or parcels of land heretofore purchased from himself and wife or himself as a widower, their heirs and assigns whatever land if any there be, located immediately between each of said lots and the shore or water line of said Silver Lake so that each of the respective present owners of said lots or parcels of land, their heirs and assigns shall own and have title to any and all land located immediately between the front line and projected side lines."

so, place himself in the position of the deceased grantor or grantors and, standing there, examine together and as one the writing and the physical characteristics of that which the writing was intended to affect."

The rule stated in *Rumrell* was written first in our state for *Dakin* v. *Dakin* (1893), 97 Mich 284, 292. This passage was quoted with approval from Taylor on Evidence:

"Whatever be the nature of the document under review, the object is to discover the intention of the writer, as evidenced by the words he has used; and, in order to do this, the judge must put himself in the writer's place, and then see how the terms of the instrument affect the property or subject-matter. With this view, extrinsic evidence must be admissible of all the circumstances surrounding the author of the instrument."

Standing then, in the assumptive position of grantor Weller when the deed of 1925 was made, we have turned first to the earliest of reliable exhibits, No. 5 aforsesaid. It was made by the Kent County Surveyor *for Mr. Weller* and is dated September, 1916. No objection to its admissibility or accuracy was submitted and it was received without objection. It provides the scale for determination of the required distances from the easterly corners of the 60′ x 100′ Barnes lot out to the shoreline. See again the aforesaid sketch. Having been made for grantor Weller, the exhibit or one of its counterpart prints presumably was before Mr. Weller when he undertook to convey, with reservation for common use of the four-foot walkway "along the shore or water line of said Lake," that which his 1925 deed sets forth.

The next unquestioned document delineating the shoreline, opposite what at the time belonged to the predecessors of the MacGregors, Barneses and Aalsburgs, is a survey made in August of 1936 by the Kent County Surveyor's Office. Utilizing and comparing the scaled distances of those surveys of 1916 and 1936, it appears that the shoreline opposite the MacGregor, Barnes, Aalsburg and other nearby lots did not change perceptibly between 1916 and 1936. Hence these documentary records of the pertinent shoreline tend to lend dependable verity to the survey of 1916, and to suggest that the two surveys (of 1916 and 1936) outweigh the presumably dim and offhand boyhood memory of plaintiffs' witness Cavera.

Mr. Cavera's memory was that, in 1925, the shoreline of the lake made a nearly closed lagoon (or bayou as he called it) opposite what are now the MacGregor, Barnes and Aalsburg tracts. Upon strength of that memory he drew offhand, upon one of the maps received in evidence, the shoreline which is designated on the sketch as the "1925 Shoreline (Testimony)." Neither court below accepted that testimony for the purpose of ascertaining the location of the 1925 shoreline. We agree and, instead, apply to the question of descriptive intent the survey of 1916, fortified as that survey is by the 1936 corresponding survey and the valued presumption of continuance, of a once existing state of things, which we think grows from this record out of the 1916 survey.

Jones has provided a remarkably enduring definition of the presumption referred to. See § 58a (52, 53, 54), headed "Presumptions as to continuance of the existing state of things—Generally." (1 Jones, Blue Book of Evidence [1913 ed], 284), reading:

"As we have shown, once a fact is established, inferences flow from it in proportion to the variety of circumstances which surround it. One ever-present inference must result as soon as that fact is proved to exist—namely, that as soon as it passes from the now to the then of its term—as soon as it has passed from the present, it is presumed to have remained in existence until the contrary is proved. We advisedly repeat the alternative, although it is understood with every disputable presumption. When things are once proved to have existed in a particular state, they are presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive."[4]

Aside from the separately complex rule of law which, once accepted, the Cavera testimony would introduce into this case from other cases where rights riparian upon a nearly enclosed cove have been involved (See *Weisenburger, supra* at 290, 291), we find weakness of such testimony over and above its conflict with the 1916 and 1936 surveys and the natural doubt which inheres in the 40-year dimmed memory of a then youngster. Such weakness lies with the fact that Mr. Cavera joined May 12, 1945, with his wife, in warranting to the Aalsburgs all riparian property claimed by the latter in this case. He must, considering the total absence of reservation from his warranty deed to the Aalsburgs, be regarded as a witness having some interest or concern in the outcome of these combined cases, to say nothing of some other possible action which might bring to question what is *not* involved here, that is, the southernmost boundary of the Aalsburg tract.
*To recapitulate:*

---

[4] We have applied this rule to an obviously necessary variety of instances to which it belongs. Among our cases are *Fowler* v. *Hamilton Moving & Storage Company* (1949), 324 Mich 614; *Sanford* v. *Millikin* (1906), 144 Mich 311, 312; *Blank* v. *Livonia Twp.,* (1889), 79 Mich 1, 5 and *Ormsby* v. *Barr* (1870), 22 Mich 80, 84, 85.

, The foregoing sums up our stated view of the proof. The surveys of 1916 and 1936 determine best the intent of Mr. Weller when, in 1925, he deeded by extending the respective lot lines so that "each of said lots or parcels of land shall extend to the shore or water line of said Lake, subject to the common right of said present owners * * * to walk along the shore of said Lake as hereinafter mentioned." Unless the parties stipulate otherwise, say to extend the Barnes' lot lines to the 1942 shoreline as determined by Judge Hoffius, or to median points between the water lines designated by the "1916 Shoreline (Survey)" and the "1942 Shoreline (Testimony)," the decretal judgment to be entered in circuit will determine the base of the needed triangle according to the 1916 survey.

No further question calls for discussion beyond stated concurrence here (a) with the determination of Division 3 that "insufficient evidence" supports the claim of acquiescence (p 98), and (b) with the corresponding conclusion of Division 3 that no case of adverse possession was made out (p 103). Aside from other insufficiencies of proof, neither acquiescence nor hostile possession is made out by a course of "joint use" of adjoining property by neighbors who once were "friendly and cooperative," nor by the common acceptance and reliance upon a deed which expressly reserved to all such neighbors the "common right to walk freely upon, over and along" a strip of land not exceeding four feet in width "along the shore or water line of said Lake."

So much of the judgment of the Court of Appeals as negates acquiescence and adverse possession is affirmed. The remainder is vacated for remand upon instruction that a new judgment enter in accordance

with this opinion. No costs, no party having prevailed fully.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.

KELLY, J., did not sit in this case.

## *Appendix*

(Designated portion of Weller deed of January 15, 1925, to lot owners in the "H. M. Weller's unrecorded plat of Silver Lake Resort.")

"WHEREAS, the undersigned Howard M. Weller was heretofore the owner of certain lands located on the Southerly or Southwesterly side or shore of Silver Lake in Cannon Township, Kent County, Michigan, and being more particularly described as located in the Southeast fractional One-fourth (SE frc. 1/4) of Section Nine (9), Town Eight (8) North, range Ten (10) West, Cannon Township, Kent County, Michigan, and

"WHEREAS, said Howard M. Weller heretofore platted that part of portion of the above mentioned land located on or adjacent to the Southerly or Southwesterly shore of said Silver Lake, said plat or platted land being known as 'H. M. Weller's unrecorded plat of Silver Lake Resort' and

"WHEREAS, said Howard M. Weller and Eliza Weller, his wife, now deceased, and said Howard M. Weller, a widower, have heretofore sold and conveyed to divers and many persons substantially all of the said land owned by them or by said Howard M. Weller on the Southerly or Southwesterly shore of said Silver Lake, said land being sold in the form of resort lots and said lots being described in certain of the deeds, contracts or instruments of conveyance by lot number of said 'H. M. Weller's unre-

corded plat of Silver Lake Resort' and described in certain other deeds, contracts or instruments of conveyance by mete and bound descriptions, and

"WHEREAS, said lots or parcels of land heretofore sold as above mentioned by said Howard M. Weller and Eliza Weller, his wife, now deceased, or by said Howard M. Weller, widower, do not in all instances as described in the deeds or other instruments of conveyance thereof extend to the shore or water line of said Silver Lake, and

"WHEREAS, said Howard M. Weller now desires to transfer and convey to each of the present owners of said lots or parcels of land heretofore sold by himself and wife or by himself, a widower, that additional piece, parcel or strip of land located immediately between each respective lot or parcel of land heretofore sold and the shore or water line of said Silver Lake so that each of said lots or parcels of land shall extend to the shore or water line of said Lake, subject to the common right to said present owners of said lots or parcels of land, their heirs and assigns to walk along the shore of said Lake as hereinafter metioned;

"NOW THEREFORE, said Howard M. Weller for and in consideration of the sum of One ($1) Dollar and other good and valuable considerations to him paid by each of the present owners of said lots or parcels of land heretofore sold by said Howard M. Weller and wife or by said Howard M. Weller, a widower, as above mentioned, the receipt of which considerations is hereby confessed and acknowledged, does hereby grant, bargain, sell and convey to each of said present owners of said lots or parcels of land, their heirs and assigns, that certain piece, parcel or strip of land located immediately between each of said lots or parcels of land respectively as described in the original deeds or conveyances from said Howard M. Weller and wife or said Howard M. Weller, a widower, and the shore or water line of said Silver Lake together with all riparian and shore rights; all said lands being located in the

southeast fractional One-fourth (SE frc. 1/4) of Section Nine (9), Cannon Township, Kent County, Michigan.

"It being the intent of said Howard M. Weller to hereby grant, bargain, sell and convey to each of the present respective owners of said lots or parcels of land heretofore purchased from himself and wife or himself as a widower, their heirs and assigns whatever land if any there be, located immediately between each of said lots and the shore or water line of said Silver Lake so that each of the respective present owners of said lots or parcels of land, their heirs and assigns shall own and have title to any and all land located immediately between the front line and projected side lines of said lots and said Silver Lake.

"PROVIDED HOWEVER, that each and all of the present and future owners of said lots or parcels of land heretofore purchased and the owners of lots or parcels of land hereafter purchased from and sold by said Howard M. Weller and wife or said Howard M. Weller, a widower, their heirs and assigns, shall have and are hereby given the common right to walk freely upon, over and along a strip of land not exceeding four (4) feet in width along the shore or water line of said Lake, and the several pieces, parcels or strips of land as above mentioned are hereby sold and conveyed subject to such right to each and all of said present owners to walk freely upon and along the shore of said Lake."