## SHIELDS v COLLINS

Docket No. 77-544. Submitted February 21, 1978, at Detroit.—Decided May 9, 1978. Leave to appeal applied for.

Arvel E. Shields brought suit against Rean Collins and Elaine Collins over a boundary line dispute seeking an injunction restraining defendants from entering onto the land in dispute and for damages for destruction of property on plaintiff's land and for construction of a fence along the property line. Defendants counter-claimed seeking a declaration of the actual property line, title to the strip of disputed property and damages. The Sanilac Circuit Court, Allen E. Keyes, J., held for the defendants awarding them title to the property and damages. Plaintiff appeals. *Held:*

The doctrine of acquiescence is properly invoked in an action where a boundary line is in dispute where the circumstances indicate that doubt existed as to the location of the boundary and that such doubt was resolved short of dispute by an agreement between the defendants and plaintiff's predecessor in title. Since the underlying reason for the doctrine is to promote the peaceful resolution of such disputes, this rationale is as applicable where there is only a doubt over the location of the boundary as where the doubt has flared into a dispute.

Affirmed.

BASHARA, J., dissented and would hold: The trial court erred in applying the doctrine of acquiescence in a case where only the defendants appeared to be in doubt as to the boundary location since the doubt, dispute, or controversy necessary to invoke the doctrine must arise from the landowners' competing contentions as to the location of the boundary.

### OPINION OF THE COURT

1. APPEAL AND ERROR—FINDINGS OF FACT—WITNESSES' CREDIBILITY—EVIDENCE.

A trial court's findings of fact will be affirmed by the Court of

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 822.
[2–6] 12 Am Jur 2d, Boundaries §§ 85, 86.

Appeals where they go to the credibility of the witnesses and are consistent with the evidence.

2. BOUNDARIES—ACQUIESCENCE DOCTRINE—RATIONALE—DOUBTS—DIS-
   PUTES.

   The underlying reason for the application of the legal doctrine of acquiescence to a boundary dispute is to promote the peaceful resolution of such disputes; this rationale is as applicable where there is only a doubt over the location of a boundary line as where the doubt has flared into a dispute.

3. BOUNDARIES—ACQUIESCENCE DOCTRINE—CIRCUMSTANCES—DOUBTS
   —DISPUTES—AGREEMENTS.

   The doctrine of acquiescence is properly invoked in an action where a boundary line is in dispute where the circumstances indicate that doubt existed as to the location of the boundary and that such doubt was resolved short of dispute by an agreement between the defendants and plaintiff's predecessor in title.

DISSENT BY BASHARA, J.

4. BOUNDARIES—ACQUIESCENCE DOCTRINE—LEGAL EFFECT—DISPUTES
   —AMICABLE RESOLUTIONS.

   *The doctrine of acquiescence gives legal effect to adjoining property owners' amicable resolutions of boundary line disputes.*

5. BOUNDARIES—ACQUIESCENCE DOCTRINE—DOUBT—DISPUTE—CONTRO-
   VERSY—COMPETING CONTENTIONS OF LANDOWNERS—APPEAL AND
   ERROR.

   *The doubt, dispute, or controversy necessary to invoke the doctrine of acquiescence must arise from the landowners' competing contentions as to the location of a boundary line; therefore, a trial court erred in applying the doctrine in a boundary dispute where only the defendants appeared to be in doubt as to the boundary location.*

6. BOUNDARIES—ACQUIESCENCE DOCTRINE—CONSTRUCTION—LAND
   CONVEYANCING LAWS—REAL PROPERTY—TITLES—STABILITY—
   CERTAINTY.

   *The doctrine of acquiescence should be strictly construed in deference to the land conveyancing laws which are founded upon the important public policy of maintaining stability and certainty in titles to realty.*

*Morrice & Lengemann,* for plaintiff.

*Drillock, Atkins, Schrope & Marcus,* for defendants.

Before: Beasley, P. J., and Bashara and D. C. Riley, JJ.

Per Curiam. Plaintiff brought suit against defendants, seeking an injunction restraining defendants from entering onto land the ownership of which is the subject of this litigation. He also sought damages for destruction of property on his land and for construction of a fence along the property line. Defendants counter-claimed, seeking a declaration of the actual property line, title to the strip of disputed property and damages. Following a nonjury trial, the trial court found for defendants, awarding them title to the property and damages. From that judgment, plaintiff appeals as of right.

The trial court filed a written opinion making findings of fact. To the extent that these findings go to the credibility of the witnesses and are consistent with the evidence, we affirm them; the trial judge has had ample opportunity to see the witnesses and to form a judgment as to who is more worthy of belief. Under these circumstances, we do not substitute our judgment for that of the trial judge.

He found that, in 1958, there was doubt between plaintiff's predecessor in title and defendants as to the boundary line between the two parcels of real property, and that they agreed to set the existing fence line as the boundary. The trial judge also found that plaintiff's predecessor in title, a woman plaintiff had dated, told plaintiff that the property line was the fence. These findings are supported by evidence; we decline to disturb them.

The trial court then found for defendants under

*Hanlon v Ten Hove,* 235 Mich 227, 230; 209 NW 169 (1926).

On appeal, plaintiff attacks the credibility of his predecessor in title and also claims that the trial court erred in finding that the doubt or disagreement which existed here rose to the level of or was of the nature requisite to justify application of the legal doctrine of acquiescence.

As indicated, we reject appellant's insistence that we accept his version of his communications with his predecessor. We do not disturb the trial court's conclusion regarding credibility. With respect to appellant's second claim, we are satisfied that the underlying reason for the rule is the promotion of peaceful resolution of boundary disputes. The best interest of a community is served by giving legal effect to friendly resolution of boundary line disputes or doubts.

This rationale is as applicable where there is only a doubt over the location of a boundary line as where the doubt has flared into a dispute. This is not a case where, in 1958, the parties made a mutual mistake as to the boundary; to the contrary, neither plaintiff's predecessor in title nor defendants knew where the correct boundary was. Thus, in the within case, doubt existed as to the location of the boundary. That doubt was resolved short of dispute by an agreement between defendants and plaintiff's predecessor in title. If there had not been any doubt as to the boundary line, there would not have been any occasion for defendants and plaintiff's predecessor in title to meet and to agree that the fence would be treated as the boundary line. Further indication of the existence of doubt is the fact that plaintiff was told by his predecessor that the fence was the boundary line, and not the line that plaintiff now claims is

correct after his belated 1972 survey. We hold that these circumstances were sufficient to invoke the doctrine of acquiescence. We do not find the trial court's decision inconsistent with the cases.[1]

Affirmed, with costs.

Bashara, J. *(dissenting)*. I must respectfully dissent from the majority holding. My review of the facts reveals that the trial court found that defendants made an inquiry to plaintiff's predecessor in title as to the location of the boundary line. In response, defendant was told that the fence marked the boundary. Concluding that this inquiry raised sufficient doubt to invoke the doctrine of acquiescence, the trial judge held that the boundary was thereby fixed at the fence line.

Acquiescence is an ancient doctrine, existing in our jurisprudence for over one hundred years. See *Smith v Hamilton,* 20 Mich 433; 4 Am Rep 398 (1870). While not specifically articulated in any of the cases that we have examined, I believe the doctrine to be predicated upon a policy of maintaining community peace and harmony. Accordingly, the doctrine gives legal effect to adjoining property owners' amicable resolutions of boundary line disputes.

Consonant with that policy, I would conclude that the doubt, dispute, or controversy necessary to invoke the doctrine must arise from the landowners' competing contentions as to the location of the boundary line. More recent cases support that conclusion. See *e.g., Rickheim v Boden,* 369 Mich 150; 119 NW2d 620 (1963), *Hanlon v Ten Hove,* 235 Mich 227, 230; 209 NW 169 (1926), *Sheldon v*

---

[1] *Rickheim v Boden,* 369 Mich 150; 119 NW2d 620 (1963), *De-Hollander v Holwerda Greenhouses,* 45 Mich App 564; 207 NW2d 187 (1973).

*Michigan Central R Co,* 161 Mich 503; 126 NW 1056 (1910).

In the case under review, only defendants appeared to be in doubt as to the boundary. Upon inquiry, they readily accepted the location designated by plaintiff's predecessor in title. These circumstances are not characteristic of the controversy requisite to invocation of the doctrine of acquiescence. Consequently, the trial court's judgment does not rest upon the proper legal principle, and plaintiff should have prevailed in his cause of action.

Our land conveyancing laws are founded upon the important public policy of maintaining stability and certainty in titles to realty. Acquiescence is an exception to those laws and is of questionable vitality in an age when the means of accurately determining boundary locations are readily available to those with an interest in real property. Accordingly, if that doctrine is to remain in our jurisprudence, it should be strictly construed in deference to the policy of our conveyancing laws. The majority's resolution of this case appears to be inimical to that policy.

I would reverse the trial court's judgment and remand this case with directions to enter judgment for plaintiff.