# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE G. SYKORA, CATHY M.
WILLIAMS, and MARY DEE GRAVES,

UNPUBLISHED
May 11, 2017

Plaintiffs/Counter-Defendants-
Appellants,

v

No. 330005
Benzie Circuit Court

NEFF CRYSTAL LAKE COTTAGE, LLC,

LC No. 12-009456-CH

Defendant/Counter-Plaintiff-
Appellee.

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's final judgment quieting title to a disputed piece of property along Crystal Lake in Benzie County. For the reasons stated below, we affirm.

This case concerns a dispute over the location of a boundary line between Lot 6 and Lot 7 in Crystalia Township adjoining Crystal Lake in Benzie County. Robert Neff and his wife Martha Neff purchased Lot 6 in 1943 and purchased Lot 7 in 1945. Lot 6 is immediately to the north of Lot 7. The lots are bisected by a road that later became M-22; the eastern portion of each lot is unplatted and has lake frontage along Crystal Lake. No structures existed on Lot 7 when the Neffs purchased it.

Mary Sykora, the sister of Martha Neff, and her children resided with the Neff family on Lot 6 during the summers while her husband Lawrence Sykora served in Europe in World War II. After the war ended, the families spent summers together on the properties. In 1949, Robert and Martha Neff deeded Lot 7 to Lawrence and Mary Sykora.

A dispute arose over the boundary line between Lot 6 and Lot 7. In July 2012, plaintiffs, the children of Lawrence and Mary Sykora, filed a complaint against defendant Neff Crystal Lake Cottage, LLC, an organization created in 1996 by Robert Neff, Sr., and the holder of the deed to Lot 6. The complaint alleged that Lot 6 was first described in a survey performed by Gourdie Fraser & Associates, Inc., in July 1996. Plaintiffs alleged that they and their predecessors in interest had treated the Gourdie Fraser survey line between the lots as the common boundary both before and after 1996, but that defendant had recently claimed an

-1-

interest in a portion of Lot 7 via affidavits and a survey done by Corey J. Hughes, P.S. Plaintiffs sought to quiet title to Lot 7 to the boundary line described in the Gourdie Fraser (i.e., the plat line extended over the road to the lakeshore) survey under theories of acquiescence or adverse possession, and alleged that defendant had been on notice of this boundary line since at least 1996 when the Gourdie Fraser survey was completed.[1]

Defendant filed a counter-complaint alleging ownership of the disputed area under theories of deed, adverse possession, or acquiescence, and alleged that plaintiffs' attempt to claim ownership of the disputed area cast a cloud on defendant's ownership of the area.

The trial court conducted a bench trial over numerous days from August 2013 through June 2015. On the first day of trial, plaintiffs abandoned their claim based on adverse possession.

Members of both families testified regarding use of the lots from the 1940s through the present. The witnesses acknowledged that family activities took place across both lots; however, members of the Neff family asserted that the Hughes line was recognized as the boundary between the lots.

John Smendzuik, a professional surveyor, testified that the Sykora family engaged his services to survey Lot 7 and the adjacent beach area. Smendzuik reviewed other surveys of the area, including the 1996 survey of Lot 6 conducted by Gourdie-Fraser & Associates. Smendzuik concluded that because the boundary lines between Lots 5 and 6 and Lots 7 and 8 were not disputed, the fair solution would be to proportion the approximately 200 feet of beach frontage on Lots 6 and 7 as evenly as possible. The resulting boundary line was very close to the line on the Gourdie Fraser survey; Smendzuik accepted that line as his boundary line between Lots 6 and 7.

Gary Wilson, a surveyor with Gourdie-Fraser & Associates, testified that in May 1996 Robert Neff, Sr., engaged the company to do a survey of Lot 6. Wilson stated that the boundary between Lot 5 and Lot 6 was defined by iron stakes, and that he used a straight line extension of the plat to find the boundary line between Lot 6 and Lot 7. His goal was to be fair to all riparian owners.

Plaintiff Lawrence Sykora testified that the cottage on Lot 7 was built in 1949 and that the Neff and Sykora families lived and associated as a single unit on Lots 6 and 7. He always believed that Lot 7 had 100 feet of beach frontage.

Robert P. Neff, Jr., M.D., a first cousin to plaintiffs, stated that in 1955 or 1956 his father and Lawrence Sykora, Sr., attempted to determine the boundary between Lot 6 and Lot 7 by using a string. Robert Jr. stated that when the Sykora family installed a dock in the late 1950s or

---

[1] In 2015, plaintiffs sold Lot 7 to purchasers who acquired the property subject to the terms of the final judgment in this case.

early 1960s the area became more clearly divided. Robert Jr. believed that his father claimed ownership of the disputed area of property.

Robert Terry, the son of Martha Terry, owned the portion of Lot 6 west of M-22, and also owned a portion of the LLC. Terry stated that his grandfather's attorney arranged for the Gourdie Fraser survey to be performed in 1996, as part of the process of establishing the LLC and an estate plan for Robert Neff, Sr.

Corey Hughes, a surveyor, testified that he became involved in this case in 2012 at the request of defense counsel. Hughes used the ordinary high water mark of the lake to define the shoreline. Michael Terry informed him that lot owners to the north and south of Lot 6 and Lot 7 did not wish to cooperate to resolve boundary issues for all the lots; Michael Terry told him where the Neff family believed the line was located. Hughes did a boundary survey based on occupancy after he made riparian apportionment calculations. Hughes opined that the Gourdie Fraser/Smendzuik line was not reasonable because it did not follow the occupation of the properties. Hughes stated that he did not use the fair and equitable principle, but that he believed that his result was fair and equitable based on occupancy and his observations.

The trial court concluded that defendant established by a preponderance of the evidence that the boundary between Lot 6 and Lot 7 ran along the Hughes line. The trial court noted that plaintiffs claimed that the boundary between Lot 6 and Lot 7 consisted of "a straight extension of the plat lines lakeward from M-22." The trial court found the surveyors to be credible. The trial court found that after the Sykoras purchased Lot 7 in 1949 and built a cabin on the property, the Neffs continued to use their property the same way they had before the sale of Lot 7. The Neffs regularly used a driveway, a portion of which was located south of the line claimed by plaintiffs. The Neffs used the beach area south of the line claimed by plaintiffs for recreation and storage of boats, docks, and the like, mowed Lot 6 to the Hughes line, and considered a jetty in the water a dividing line between the lots. In the mid-1950s Robert Neff, Sr., and Lawrence Sykora, Sr., and other members of the families discussed the location of the line as part of the process of determining the feasibility of constructing an addition on the Sykora cottage. The trial court also noted that other activities, such as the trimming of trees, the eradication of poison ivy, and the playing of games, generally respected the Hughes line, and that members of the Neff family sought permission to use property south of that line.

The trial court observed that plaintiffs' claims rested largely on the Smendzuik survey, the Gourdie Fraser survey, and the 1996 deed of Lot 6 to defendant LLC as support for their assertion that the boundary between the lots consisted of an extension of the plat line. The trial court acknowledged that the legal description of Lot 6 in the 1996 deed used an extension of the plat line as the southern boundary, but stated that no evidence showed that Robert Neff, Sr., who was caring for his terminally ill wife at the time the Gourdie Fraser survey was completed, considered that description correct or was even aware of it. The trial court also observed that the Sykora family was not a party to the deed and could not rely on it to establish their ownership of the disputed area.

The trial court credited the testimony of defendant's witnesses regarding the use of the property from 1943 and before that date until the dispute arose in 2012. The trial court summed up its ruling as follows:

-3-

The Court is satisfied that as between Lot 6 and Lot 7 Defendants/Counter-Plaintiffs have shown by a preponderance of the evidence that the line as depicted on the Corey Hughes drawing represents the historic occupation and usage and recognized boundary as recognized really by both families.

The trial court found that the Hughes survey reflected usage of the property and made adjustments for occupancy.

On appeal, plaintiffs argue that an actual or implied agreement to honor a particular property line is an element of acquiescence, and both parties must be aware of the terms of the agreement. The trial court stated that the evidence showed that Robert and Martha Neff intended to deed 50% of the lakeward property to the Sykora family, but failed to consider this intent when it found that the parties adhered to the Hughes line. The 1996 deed confirmed the Neff family's intent to deed Lot 7 as extended by the plat lines to the Sykora family. The trial court also failed to consider that the evidence did not show that the Sykora family did not have knowledge of the property line now claimed by defendant.

A quiet title action is equitable in nature. *Canjar v Cole*, 283 Mich App 723, 727; 770 NW2d 449 (2009). We review for clear error a trial court's findings of fact in a bench trial, and review de novo the trial court's conclusions of law. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

In *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001), this Court set out the principles of the doctrine of acquiescence:

> The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line. *West Michigan Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995); *McQueen v Black*, 168 Mich App 641, 644; 425 NW2d 203 (1988). The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes. *Shields v Collins*, 83 Mich App 268, 271-272; 268 NW2d 371 (1978). The proper standard applicable to a claim of acquiescence is proof by a preponderance of the evidence. *Walters v Snyder*, 239 Mich App 453, 455; 608 NW2d 97 (2000).

Possession of the property need not be hostile or without permission to support a claim of acquiescence. *Killips*, 244 Mich App at 260. The question of acquiescence becomes relevant "[o]nly when there has been some agreement, whether tacit or overt, as to the location of the boundary[.]" *Wood v Denton*, 53 Mich App 435, 439-440; 219 NW2d 798 (1974). A physical object marking a boundary need not be identified. *Walters*, 239 Mich App at 457-458.

The evidence showed that Robert and Martha Neff deeded Lot 7 to Lawrence and Mary Sykora in 1949. The deed did not transfer riparian rights; however, a deed "should be strictly

-4-

construed against the grantor so that the grantee is conferred the greatest estate that the terms of the deed will permit." *Stevens Mineral Co v Michigan*, 164 Mich App 692, 697; 418 NW2d 130 (1987), citing 6A Powell, Real Property, ¶ 887[5], p 81-72.[2] The lakeward portion of Lot 7 was not platted; thus, at the time the Sykora family acquired Lot 7, a surveyed boundary did not exist. The trial court found that the Neffs intended to deed 50% of the lakeward property to the Sykoras. However, that finding does not mandate a conclusion that the boundary between the lots was the unextended plat line.

The testimony of various witnesses established that for decades the Neff and Sykora families socialized on both lots. However, this evidence could not support a conclusion that the use of both lots by both families meant that no boundary was recognized. Plaintiffs' reliance on *Aalsburg v Cashion*, 384 Mich 236; 180 NW2d 792 (1970), is misplaced. In that case, adjoining property owners had deeds conveying the right to joint use of land along the shore of the lake. The *Aalsburg* Court found that a claim of acquiescence could not be supported when the property owners had a joint right to the shore land. *Id*. at 244. In this case, no deed established a joint right of the Neffs and the Sykoras to use both lots. The mutual use was based on family ties rather than conveyance. The deeds did not preclude a finding of acquiescence to a particular boundary between the lots.

The trial court noted that a large portion of a driveway used by both families ran south of the boundary line claimed by plaintiffs. Mary Dee Graves testified that the driveway ran south of a flower garden located on Lot 6. The Hughes line places most of the driveway on Lot 6.

The evidence showed that the Neffs used the dock and the beach area on Lot 6 and the disputed portion of Lot 7 to store boats, rafts, and beach equipment. Both families used the equipment, but with few exceptions, it belonged to the Neffs. Robert Neff, Jr., testified that the Sykoras built their own dock in the late 1950s or early 1960s; thereafter, use of the area became more divided between the families. Neff also testified that a jetty in the water at the Hughes line was considered the boundary between the lots. Michael Terry testified that his family stored docks in the disputed area.

Robert Neff, Jr., testified that in the mid-1950s the Sykora family contemplated adding a garage to their home. The families met between the cabins to determine the location of the boundary between the lots. The line the families settled on was very close to the Hughes line.

Evidence regarding mowing, tree trimming, and the installation of an invisible dog fence supported a finding that the parties acquiesced to the Hughes line. Michael Terry testified that he discussed mowing with Lawrence Sykora, Jr., and that Sykora told him not to mow past the Hughes line. Julie Terry, Robert Terry's wife, testified that Sykora pointed out the same mow line to her. Randi Terry, Michael Terry's wife, testified that in 2007 Lawrence Sykora, Jr., told her that the mow line was the Hughes line. Martha Terry testified that she declined a request by

---

[2] The parties do not dispute that the Sykora family owned at least some portion of the lake frontage on Lot 7.

Lawrence Sykora, Jr., to trim a tree she believed to be on Lot 6. She acknowledged that after Sykora trimmed a portion of the tree on Lot 7, it was discovered that the entire trunk of the tree was on Lot 7. Michael Terry also testified that he spoke with Lawrence Sykora, Jr., about installing an invisible dog fence, and that Sykora advised him to install the fence along the Hughes line.

The trial court concluded that the 1996 deed did not reflect the way the Neff family used Lot 6 from the time of purchase until the present, found the testimony given by defense witnesses regarding use of the lots to be credible, and concluded that the evidence supported a finding that the parties acquiesced in the Hughes line as the boundary between the lots for the requisite 15-year period. The trial court's findings are not clearly erroneous. The trial court correctly applied the law to the facts and found that because the parties acquiesced to the boundary known as the Hughes line for the statutory period of 15 years, defendant owned the disputed area.

Plaintiffs argue that the trial court improperly relied on suggestions regarding the use of the property before 1943 as well as the use of both lots between 1945 and 1949, because the use during those periods did not support a finding of acquiescence. We agree that the trial court erred to the extent that it found that use of the lots before 1949 could be tacked by the parties in this case. In *Killips*, 244 Mich App at 260, this Court stated:

> The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years. *Jackson v Deemar*, 373 Mich 22, 26; 127 NW2d 856 (1964). In *Siegel v Renkiewicz Estate*, 373 Mich 421, 426; 129 NW2d 876 (1964), our Supreme Court stated that no proof of a parol transfer is needed to establish tacking.

The trial court noted that the evidence showed that Lot 6 had a cottage, a driveway, and a storage shed at the time the Neff family purchased it in 1943. Lot 6 was mowed, but Lot 7 was overgrown. Lot 7 remained unoccupied until the Neff family sold it to the Sykora family in 1949.

The trial court held that the parties could tack the period before 1943 and from 1945 until 1949, to establish acquiescence to the Hughes line. We conclude that the trial court erred by so holding. Evidence was introduced to show what was on each lot before 1943, but no evidence showed how the lots were used before that date and whether the owners recognized the Hughes line as the boundary between the lots. Similarly, between 1945 and 1949 the Neff family owned both lots, and the evidence showed that the families treated the property as one lot. Because no evidence showed that the parties' predecessors in title acquiesced to the boundary during those periods, those periods cannot count toward the mandated 15-year period. *Killips*, 244 Mich App 256.

Accordingly, the trial court erred in holding that tacking applied in this case. This error was harmless, however, because the previously summarized evidence established that the parties themselves acquiesced to the Hughes line for a period well in excess of 15 years. Therefore, allowing the trial court's verdict to stand is not inconsistent with substantial justice. MCR 2.613(A).

Finally, we note that plaintiffs argue that the 1996 deed reflected a fair apportionment of the riparian lands appurtenant to Lots 6 and 7. They argue that this apportionment was the same reflected in the Gourdie Fraser and Smendzuik surveys, and should be honored. But because we agree with the trial court that the parties acquiesced to the Hughes line for the requisite period, the apportionment as reflected in the Gourdie Fraser and Smendzuik surveys do not control.

Affirmed. Defendant may tax costs.


/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher