### JACKSON v. DEEMAR.

1. Boundaries—Acquiescence—Evidence.

   Evidence presented in suit to quiet title to 19.74-foot strip of land between lands to which plaintiffs and defendants had undisputed title *held*, to be sufficient to support finding of trial judge that boundary of plaintiffs' land included the disputed strip where plaintiffs' predecessors had farmed up to the boundary claimed by plaintiffs for a period much in excess of 15 years.

2. Same—Establishment by Acquiescence—Bona Fide Dispute—Monuments—Occupation for Statutory Period.

   Acquiescence as to a boundary line may be established either by the settlement thereat of a bona fide controversy between the abutting owners, in which case the line is fixed at the agreed upon monuments, or where the line is acquiesced in for the statutory period irrespective of whether there has been a bona fide controversy as to the boundary.

3. Same—Acquiescence—Tacking.

   Acquiescence of predecessors in title to boundary can be tacked on that of the parties.

Appeal from Allegan; Smith (Raymond L.), J. Submitted December 6, 1963. (Calendar No. 129, Docket No. 50,308.) Decided May 4, 1964.

Bill by David A. Jackson and Lauraine S. Jackson against Irving Deemar, Herman Weinstein and others to quiet title. Judgment for plaintiffs, quieting title, fixing boundary to property and setting aside certain quitclaim deeds secured by defendants. Defendants appeal. Affirmed.

*Hoffman, McDonald & Hoffman (Frederick D. McDonald,* of counsel), for plaintiffs.

*Schaberg & Schaberg (John C. Schaberg,* of counsel), for defendants.

SMITH, J. The succinct opinion of Circuit Judge Raymond L. Smith adequately sums up the case and is quoted herewith:

"This is a suit to quiet title to plaintiffs' property and *to determine the common boundary* between the lands of these parties.

"In 1960 plaintiffs acquired title to 'the north 38.84 acres of the northeast fractional quarter west of road US–31, of section 24, T 1 N, R 17 W, Casco township, Allegan county, Michigan.' It is not disputed that the north boundary of this description is the north line of section 24, Casco township, nor is it disputed that the east line is highway US–31 and the west line Lake Michigan. *The south boundary line is in dispute.*

"To the south of plaintiffs' property lies Mt. Pleasant Manor Plat which also abuts Lake Michigan. *Defendants claim they are the owners of a strip of land 19.74' wide between the Mt. Pleasant Manor Plat and plaintiffs' property.*

"*Plaintiffs trace title back to 1861 when Levi R. Brown* deeded to Nathaniel Q. Munger '40 acres off the north side of the northeast fractional quarter of section 24'. In 1866 Munger deeded 1–1/20 acres of this land lying east of Lake Shore road (now US–31) to another. From that time the property acquired

by plaintiffs has been described as containing 38–84/100 acres.

"*Defendants' chain of title is likewise traced to Levi R. Brown* who in 1865 deeded to William Sly property lying south of Munger and so described and also stating the 'northern boundary is 44–11/25 rods south of the north section line \* \* \*' A survey revealed that when the northern boundary is located 44–11/25 rods south of the north section line there is a gap of 19.74 feet between the north boundary line of Mt. Pleasant Manor Plat and the south line of plaintiffs' property *depending upon where the west line (shore of Lake Michigan) is located.* Defendants sought out the proper heirs and acquired quitclaim deeds to this strip of 19.74 feet and seek to deprive plaintiffs of this parcel.

"The testimony satisfies the court that plaintiffs' predecessors in title from 1892 farmed the entire area from the north section line to the north line of Mt. Pleasant *Manor Plat and further that the property owners on both sides of the disputed line acquiesced in the boundary line as lying on the north line* of Mt. Pleasant Manor Plat extended east to US–31. Even the testimony of Mrs. Jessie Dailey, defendants' witness, added substance to this claim. *Such acquiescence extended far beyond the statutory period and establishes the boundary.*

"Added weight may be found in the several deeds in defendant's chain of title in which the boundary is referred to as the south boundary of plaintiffs' property, and in the failure of any deed to refer to the 19.74-foot strip in any manner.

"Accordingly the court finds that the plaintiffs are the owners of all the land lying south of the north section line, west of US–31, north of Mt. Pleasant Manor Plat and east of Lake Michigan."

On appeal, defendants contend that the strip of land in dispute was retained as a right-of-way by Frank Shumway, from whose heirs they claim to have acquired quitclaim deeds, and that presently

such land is vacant except for growths of grass and brush. Defendants thus claim that there was no evidence from which the trial court could conclude that plaintiffs' predecessors in title had farmed up to the north line of defendants' lot, or that there was acquiescence as to the boundary line lying on the north line of defendants' lot.

Evidence was presented at trial which disclosed that plaintiffs' claimed boundary line was centered in a 2-foot wide ditch, and that the land south of the ditch was farmed up to, but never north of it. Plaintiffs proofs tended to show that on a portion of the south side of plaintiffs' lot a pear orchard had stood; such orchard being planted 15 to 20 feet from the line claimed by plaintiffs to be the boundary. The testimony further indicated that such a distance from a boundary line was customary in order to allow a working area around the trees. Evidence was also presented showing that an apple orchard had existed on the remainder of the southern line of plaintiffs' lot, such orchard being planted up to within a half of a tree row of the ditch. A review of the record before us discloses sufficient evidence from which the trial judge could arrive at the findings disputed by the defendants.

Defendants further contend that the trial court erred in finding the boundary line to be established by acquiescence, there being no evidence of a prior dispute or controversy regarding said line. The doctrine of acquiescence is explained in *Johnson* v. *Squires,* 344 Mich 687, 692:

"We had occasion, in the case of *Renwick* v. *Noggle,* 247 Mich 150, to examine the doctrine of acquiescence in the establishment of boundary lines and we there held (p 152):

" 'The rules for establishment of a boundary line by acquiescence are summarized by Mr. Justice FEL-

LOWS in *Hanlon* v. *Ten Hove,* 235 Mich 227, 231, 232, (46 ALR 788):

" ' "While acquiescence alone is not a defense, if acquiescence follows the resolving of a doubt as to where the line is or the settlement of a bona fide controversy, which settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter, such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; *likewise where the line is acquiesced in for the statutory period it is also fixed.*" [Emphasis in *Renwick* and *Johnson.*]

" 'In that case it was held that the acquiescence of predecessors in title can be tacked on that of the parties, and if the whole period of acquiescence exceeds 15 years, the line becomes fixed, *regardless of whether there had been a bona fide controversy as to the boundary.*' " (Emphasis supplied.)

Likewise, in the case at bar, although there was no evidence of dispute or controversy, the doctrine of acquiescence was properly applied by the trial court, it being shown by ample evidence that the boundary as fixed by the trial court had been acquiesced in for a period of 15 years, and much more.

Affirmed. Costs to appellees.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and O'HARA, JJ., concurred.

ADAMS, J., took no part in the decision of this case.