GENEJA v RITTER

Docket No. 69135. Submitted November 9, 1983, at Detroit.—Decided
    February 8, 1984.

Gerald J. and Emma J. Geneja purchased a residential property
    on land contract in 1975. A year later the Genejas had a survey
    performed on the property, and it was discovered for the first
    time that their neighbors' driveway and a portion of a building
    belonging to the neighbors were encroaching upon the Genejas'
    property. The Genejas filed suit against the neighbors, John C.
    and Helen Ritter, in Macomb Circuit Court to solve the dispute
    over who owned or had rights in the driveway area. Defendants
    filed a counter-complaint alleging that defendants are entitled
    to ownership of the encroached-upon property because the 15-
    year limitation period had expired against plaintiffs' and their
    predecessors' interest in the property. The trial court, Frank E.
    Jeanette, J., found that no prescriptive easement could have
    been created because the Ritters used and paved the drive with
    the express permission of plaintiffs' predecessor in interest and
    that permission could be revoked at will. Defendants appealed.
    Held:

    1. Although the parties and the trial court seemingly limited
    the issue of defendants' right to use or possess the driveway in
    question to whether defendants had a prescriptive easement in
    the property, defendants in their counter-complaint were seek-
    ing an ownership interest in the property and the trial court
    was cognizant of this ownership claim when it issued its opin-
    ion. Defendants' claim has merit under theories of adverse
    possession, acquiescence, and prescriptive easement. Of all the
    theories, that of acquiescence is most appropriate. The trial
    court should have applied the doctrine of acquiescence to this
    case. Under that doctrine, permission to use the driveway
    would have been irrelevant. Therefore the trial court clearly
    erred in its decision.

    2. The trial court's judgment is vacated and the Court of

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 145.
[2, 3] 12 Am Jur 2d, Boundaries §§ 77, 85.
[3] 3 Am Jur 2d, Adverse Possession § 58.

Appeals substitutes its own order granting ownership in the driveway to the defendants.

Reversed.

1. QUIETING TITLE — APPEAL — *De Novo* REVIEW — FINDINGS OF FACT.

A suit to quiet title is equitable in nature and subject to *de novo* review; nevertheless, the Court of Appeals will give great weight to the findings of fact made by the trial court and usually will not disturb those findings unless convinced that it would have reached a different result had it been in the lower court's position (GCR 1963, 517.1).

2. BOUNDARIES — ACQUIESCENCE.

A boundary line may be established by acquiescence where the acquiescence follows the resolving of a doubt as to where the line is or follows the settlement of a bona fide controversy, which settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter; such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; likewise where the line is acquiesced in for the statutory period it is also fixed.

3. BOUNDARIES — ACQUIESCENCE — TACKING.

Acquiescence of predecessors in title can be tacked on that of the parties to a boundary dispute and if the whole period of acquiescence exceeds 15 years the line becomes fixed.

*Carl W. Huhn,* for defendants.

Before: T. M. BURNS, P.J., and GRIBBS and C. J. HOEHN,* JJ.

PER CURIAM. Defendants appeal as of right from a bench trial decision and order denying that they had a prescriptive easement in a driveway encroachment because the plaintiffs' predecessors in interest gave defendants "express permission" to use the driveway property.

Both defendants' and plaintiffs' property was originally owned by Arthur and Mabel Schuh-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

macher. On August 1, 1950, the Schuhmachers sold the southern portion of their property to defendants, who continue to own the same. On August 3, 1954, the Schuhmachers sold the remaining northern portion of their property to Harvey and Viola Krause. On January 3, 1956, the Krauses sold their property to plaintiffs' predecessors in interest, the Masons. On January 25, 1975, the Masons sold their property on a land contract to plaintiffs. Plaintiffs had a survey performed on their newly acquired property on January 21, 1976, and for the first time it was discovered that defendants' driveway and part of their building were encroaching upon plaintiffs' land.

When defendants purchased their property in 1950 from the Schuhmachers, the driveway served as the only entrance onto defendants' land. An old wooden fence once ran along the driveway's northern edge, but had since rotted away. Steel posts were used to replace the old fence's wooden posts along this northern edge of the driveway some time in 1951 or 1952. Some of these steel posts were knocked down when people tried to turn around in defendants' driveway, but some of the steel posts remained in the ground when plaintiffs acquired the property in 1975.

Defendants assert that they never asked anyone's permission to use the driveway in question, and there was no evidence introduced at trial to contradict this assertion. Defendants and the Masons considered each other to be good friends, and when defendant John C. Ritter informed Ben Mason that defendants were going to pave the driveway, Mason had no objections and told Ritter to "put it all the way up to my line". Mason's testimony in this regard was consistent with defendant John C. Ritter's testimony. Ritter said that he:

"[t]old Mr. Mason we were going to pour concrete along that drive area. It was continuously a problem. And I wanted his permission to park our cars over where the body shop is now.

*"The Court:* On his property?

*"The Witness:* Yes, and he said, 'When you pour that, why don't you pour all the grass too, so we don't have to cut any more grass.' That was his remark. That was the only thing."

On September 8, 1976, plaintiffs filed this action in equity to solve the dispute over who owned or had rights in the driveway area.

On May 31, 1977, defendants filed a counter-complaint against plaintiffs alleging that defendants are entitled to ownership of the encroached-upon land because the 15-year limitation period had expired against plaintiffs' and their predecessors' interest in the property.

The trial judge found that the Masons, plaintiffs' predecessors in interest, and defendants were good friends and that Ben Mason "allowed [defendants] to improve the drive on part of Mason's land". Accordingly, he held that no prescriptive easement could have been created because "Ritter used and paved the drive with the express permission of Mason".[1] Judgment was entered on November 17, 1982.

A suit to quiet title is equitable in nature and subject to *de novo* review; nevertheless, this Court will give great weight to the findings of fact made by the trial court and usually will not disturb those findings unless convinced that it would have reached a different result had it been in the lower court's position. *Corrigan v Miller,* 96 Mich App

---

[1] The trial court also found that the easterly edge of Ritter's building encroached upon plaintiffs' land and awarded plaintiffs $36 for this encroachment. Defendants accept this part of the court's opinion.

205, 208; 292 NW2d 181 (1980); *DeHollander v Holwerda Greenhouses,* 45 Mich App 564, 566; 207 NW2d 187 (1973). See, also, GCR 1963, 517.1; 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 595-597.

The parties and the trial court seemingly limited the issue of defendants' right to use or possess the driveway in question to whether defendants had a prescriptive easement in this property. However, according to defendants' counter-complaint, John C. Ritter's testimony, and defendants' trial brief, defendants were seeking an ownership interest in this property as well. The trial court was cognizant of this ownership claim when it issued its opinion. We, therefore, have analyzed this case to determine whether defendants should prevail upon a claim of adverse possession, acquiescence, or prescriptive easement.

While defendants' claim has merit under all of these theories, we find that the doctrine of acquiescence is most appropriate. The doctrine of acquiescence usually arises in the context of border disputes. The Supreme Court examined and explained the doctrine in *Renwick v Noggle,* 247 Mich 150, 152; 225 NW 535 (1929), where it held:

"The rules for establishment of a boundary line by acquiescence are summarized by Mr. Justice FELLOWS in *Hanlon v Ten Hove,* 235 Mich 227, 231 [1926]:

" 'While acquiescence alone is not a defense, if acquiescence follows the resolving of a doubt as to where the line is or the settlement of a *bona fide* controversy, which settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter, such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; *likewise, where the line is acquiesced in for the statutory period it is also fixed.'* [Emphasis in original.]

"In that case it was held that the acquiescence of predecessors in title can be tacked on that of the parties, and if the whole period of acquiescence exceeds 15 years, the line becomes fixed, *regardless of whether there had been a bona fide controversy as to the boundary.*" (Emphasis supplied.) See also *Jackson v Deemar,* 373 Mich 22, 25-26; 127 NW2d 856 (1964).

Defendants purchased their property in 1950 from the Schuhmachers. When defendants entered into possession, there was only one entrance way to their land and that was the driveway in question. Along the northern edge of this driveway was an old wooden fence which has since rotted away. Defendants replaced the old wooden posts, which once supported the fence, with steel posts sometime in 1952. Because of the winter months, the driveway became muddy and difficult to use, so defendants improved it by adding gravel and stone. Some of the steel posts were knocked down by persons who used the driveway as a turnaround, but a few steel posts and shrubbery remained when plaintiffs purchased the property from the Masons in 1975. Defendants believed that they owned this driveway and thought that its northern edge served as their property line.

Ben Mason, plaintiffs' predecessor in interest, testified that defendants never asked permission to use the driveway. When defendants were paving the driveway, Mason did not think that it was against his interest and told defendants to go ahead and pave it up to the property line. Mason believed that the shrubbery and steel posts which ran along the northern edge of the driveway served to separate his northern parcel of land from defendants' southern parcel of land. Mason indicated that he let defendants have the southern portion of property wishing only to retain a few

feet around his shed. He said that he did not know where the outline of his property was located, but was satisfied with how things were when he moved onto the northern parcel of land in 1956. Ben Mason also disagreed with plaintiffs' survey. Both the Ritters and the Masons considered themselves to be good friends.

This evidence conclusively establishes that the Masons and Ritters divided their properties according to what they thought they owned. The northern edge of the driveway, where the old wooden fence was once located, served as the boundary line between the Masons' northern parcel of land and the defendants' southern parcel. The fact that the trial judge found that Ben Mason gave defendant permission to use the driveway is irrelevant since Mason's permission would not negate defendants' ownership claim under the doctrine of acquiescence. There is also no evidence in the record to support the finding of express permission. The fact that defendants and Ben Mason were friends does not establish that permission was given.[2]

Under the present circumstances, we believe that the trial judge was cognizant of defendants' acquiescence claim as evidenced in defendants' pleadings and defendants' trial brief. Therefore, the trial judge should have applied the doctrine to this case. Since sidewalks may serve as boundary monuments, there is no reason why driveways and

[2] We recognize that Ben Mason's testimony regarding his alleged permission to use the driveway is rather confused. Mr. Mason had a rather severe head injury which could readily account for these discrepancies. At most, this testimony could establish that Ben Mason gave permission to defendant to extend the pavement for the driveway onto areas of his grass. It does not appear that defendant paved over any of Mr. Mason's grass. Furthermore, Mr. Mason's grass was beyond the driveway and is not within the area concerned in this dispute.

steel posts should not similarly serve as boundary monuments. *Cf. Siegel v Renkiewicz Estate,* 373 Mich 421, 426; 129 NW2d 876 (1964). Accordingly, since the trial judge's decision is clearly erroneous, this Court vacates that ruling and substitutes its own order granting ownership in the driveway to the defendants under the doctrine of acquiescence. GCR 1963, 820.1(7).

Reversed.