BOOKER v WEVER

1. WATERS AND WATERCOURSES—RIPARIAN RIGHTS—INLAND LAKES.

Riparian rights attach to lands bounding an inland lake if the lake was a permanent body of water in a defined basin at the time the United States parted with title to the land surrounding it, such rights being vested in the patentees and their grantees.

2. BOUNDARIES—RIPARIAN RIGHTS—IRREGULARLY-SHAPED LAKES—RELICTED LAND.

Ownership of relicted land is determined by the method applicable for irregularly-shaped lakes if the lake was irregularly shaped when the United States parted with title, even though the shape of the lake may have changed later, since riparian rights were fixed at that time.

3. BOUNDARIES—ESTABLISHMENT—ACQUIESCENCE.

The doctrine of acquiescence to establish a boundary line between adjacent lots is not applicable where defendants unilaterally placed railroad ties along what they thought was the boundary five years prior to plaintiffs' suit, since defendants' act was neither the settlement of a bona fide controversy, nor did the period of acquiescence continue for the statutory period.

4. BOUNDARIES—RELICTED LAND—IRREGULARLY-SHAPED LAKES—DECLARATORY JUDGMENT.

Upon a finding that a lake is irregularly shaped in an action for declaratory judgment to determine title to relicted land, the trial court must ascertain the parties' rights to the land according to the rule of law applying to irregularly-shaped lakes.

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters § 273 *et seq.*
[2] 56 Am Jur, Waters § 476 *et seq.*
[3] 12 Am Jur 2d, Boundaries § 85 *et seq.*
Establishment of boundary line by oral agreement or acquiescence, 113 ALR 421.
[4–6] 56 Am Jur, Waters §§ 464, 490.

5. BOUNDARIES—RIPARIAN RIGHTS—RELICTED LAND—IRREGULARLY-SHAPED LAKES.

The proper method of determining the riparian rights of parties in an irregularly-shaped lake uncovered by reliction is to divide the relicted land in proportion to the shoreline owned.

6. BOUNDARIES—RELICTED LAND—IRREGULARLY-SHAPED LAKES—RIPARIAN RIGHTS—SHORELINE.

The shoreline owned by a party for the purpose of dividing relicted land according to the riparian rights in an irregularly-shaped lake is the shoreline at the time the lake and surrounding land was patented by the United States to the state.

Appeal from Muskegon, Charles A. Larnard, Jr., J. Submitted Division 3 May 11, 1972, at Grand Rapids. (Docket No. 10342.) Decided August 28, 1972.

Complaint by Henry L. Booker and Susie E. Booker against Merlin O. Wever and Jeanne Wever for declaratory judgment to determine title to land. Judgment for defendants. Plaintiffs appeal. Affirmed in part, reversed in part and remanded with instructions.

*White, Spaniola, Knudsen & Stariha,* for plaintiffs.

*Poppen, Street, Sorensen & Engle* (by *Michael M. Knowlton*), for defendants.

Before: R. B. BURNS, P. J., and HOLBROOK and O'HARA,* JJ.

HOLBROOK, J. Plaintiffs and defendants are neighbors owning adjoining lake lots on Wolf Lake in Muskegon County, Michigan. The plaintiffs purchased their lot in 1966, defendants in 1962.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Through the course of events over the years prior to and including the aforementioned dates, the level of Wolf Lake has been dropping, leaving lands uncovered by reliction in front of the lots owned by the parties. The defendants have placed railroad ties along a line which they contend is the proper boundary line on the land uncovered by reliction and claimed by riparian right. Plaintiffs contend that these railroad ties, in part, mark off land lawfully belonging to the plaintiffs by virtue of their riparian rights.

Plaintiffs commenced a declaratory judgment action against the defendants in Muskegon County Circuit Court on May 15, 1970, seeking a determination of the location of the common boundary line between the adjoining lake lots. The cause was tried before the trial judge without a jury. From a judgment of no cause of action against plaintiffs, plaintiffs appeal.

## I.

Whether the trial court erred in finding that Wolf Lake was not basically circular in shape so as to preclude the application of the *filum aquae* doctrine in apportioning the land uncovered by reliction?

Plaintiffs contend that the trial court's determination that Wolf Lake is pear-shaped for the purpose of determining the parties' respective rights to the land uncovered by reliction is erroneous. They assert that the uncontroverted testimony and exhibits presented at trial indicate that Wolf Lake is essentially a round lake which would require the application of the *filum aquae* rule to apportion the land uncovered by reliction.

The history of Wolf Lake indicates that the land

surrounding the lake including the properties in question was originally owned by the United States Government who conducted a survey of the lake in 1837. The lake at that time was pear-shaped. Subsequently, the lake and its surrounding lands were patented to the State of Michigan by the United States Government. The properties in question were thereafter conveyed to various owners down to the present parties.

Sometime more than 20 years ago, a public causeway road was built over the neck portion of the pear-shape of the lake. A culvert allows water from the top of the original pear-shaped portion to flow into the main body of the lake. Some water is retained in the top portion of the pear of the lake.

The county surveyor, testifying as an expert witness, indicated that the top portion of the pear of the lake cut off by the causeway is a non-navigable, low marsh area that is no longer considered a part of the lake. Because of this, plaintiffs contend that the lake is now bound by this causeway and that the shape of the lake is and should be found to be essentially round for the purpose of apportioning the land uncovered by reliction.

It is clear that where the United States, as owner of land surrounding a lake, which is at the time a permanent body of water in a defined basin, conveys such land, riparian rights may thereafter be attached to such lands and passed to subsequent grantees. *Lee Wilson & Co v United States,* 245 US 24; 38 S Ct 21; 62 L Ed 128 (1917); *United States v Hale,* 7 F2d 882 (CA 8, 1925); *United States v Rhodes,* 3 F2d 771 (CA 8, 1925); 67 CJ § 276, p 850; 112 ALR 1114; 23 ALR 783. If a lake was a permanent body of water in a defined basin at the time the United States parted with its title to the land surrounding it, and if the meander line

was properly run, riparian rights attach under the state law, and become vested in the patentees and their grantees. *United States v Rhodes, supra.* It is also clear that Michigan adheres to the rule of law that riparian rights attach to lots bounded by natural water courses including inland lakes. *Bauman v Barendregt,* 251 Mich 67 (1930); *St Helen Shooting Club v Mogle,* 234 Mich 60 (1926); 112 ALR 1114.

Applying these rules to the instant case, it appears that when the land surrounding Wolf Lake, which was originally owned by the United States Government, was patented to the State of Michigan, the riparian rights thereto vested in the state. These vested riparian rights attached to all of the lands surrounding the lake. The rule of law for ascertaining these rights was the method applicable for pear-shaped or irregularly shaped lakes. *Weisenburger v Kirkwood,* 7 Mich App 283 (1967). This continued to be the proper method for ascertaining the vested riparian rights for the lands surrounding the lake even though the shape of the lake may have changed over time. Plaintiffs have not cited any authority for the proposition that the method of ascertaining the riparian rights on a lake is changed when the shape of a lake may change over time. Thus, when the properties in question were conveyed to the various grantees in the chain of title down to the present parties, the vested riparian rights as ascertained by the method applicable to pear-shaped lakes attached to each such conveyance, none having been reserved. We therefore hold that the trial court did not err in determining that for the purposes of ascertaining the parties' riparian rights in the land uncovered by reliction, Wolf Lake is, as originally surveyed by the United States Government, a pear-shaped lake.

## II.

Whether the trial court erred in determining that plaintiffs' predecessors in title over a period of 67 years from 1903 all acquiesced in the occupation of defendants and their predecessors in defendants' present estate so that plaintiffs are now bound by such acquiescence?

Plaintiffs contend that the trial court's theory in its finding of acquiescence is not sustained by the pleadings or the evidence.

The doctrine of acquiescence is well-settled in Michigan.

"The doctrine of acquiescence, as recognized in Michigan, is found in *Jackson v Deemar,* 373 Mich 22 (1964). Therein, the Michigan Supreme Court quoted from *Johnson v Squires,* 344 Mich 687, 692 (1956), as follows (pp 25, 26):

" 'We had occasion, in the case of *Renwick v Noggle,* 247 Mich 150 [1929], to examine the doctrine of acquiescence in the establishment of boundary lines and we there held (p 152):

" ' "The rules for establishment of a boundary line by acquiescence are summarized by Mr. Justice FELLOWS in *Hanlon v Ten Hove,* 235 Mich 227, 231, 232 (46 ALR 788) [1926]:

" ' " While acquiescence alone is not a defense, if acquiescence follows the resolving of a doubt as to where the line is or the settlement of a bona fide controversy, which settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter, such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; *likewise where the line is acquiesced in for the statutory period it is also fixed.'* (Emphasis in *Johnson* and *Renwick.)*

" ' "In that case it was held that the acquiescence of predecessors in title can be tacked on that of the parties, and if the whole period of acquiescence exceeds

15 years, the line becomes fixed, *regardless of whether there had been a bona fide controversy as to the boundary."* ' (Emphasis in *Jackson.)" Weisenburger v Kirkwood, supra,* p 289.

An examination of the record fails to reveal the required facts necessary to establish the application of the doctrine of acquiescence. The pleadings do not refer to acquiescence. There is no evidence of a resolution of a doubt or settlement of a bona fide controversy by the parties herein or their predecessors contemplating an agreement on a proper boundary. There is no evidence that both of the parties or their predecessors fixed a line, set monuments on such a line, or in some manner established and maintained a visible common boundary. Defendants' placing of the railroad ties five years prior to the time of trial on what they thought was the boundary line was purely a unilateral act which was disputed by plaintiffs' immediate predecessor in title. Furthermore, there is no evidence of acquiescence in the nature of compliance or acceptance, tacitly or passively, of an agreed line for the statutory period. We therefore hold that the doctrine of acquiescence does not apply to the instant case.

### III.

Whether the trial court should have applied the rule of law applicable to irregularly-shaped lakes to determine the rights of the parties herein in the land uncovered by reliction?

Plaintiffs contend that the trial court, having determined that Wolf Lake was a pear-shaped lake, should have determined the parties' rights in

the disputed land uncovered by reliction by applying the rule of law applicable to irregularly shaped lakes.

A review of the record indicates that in the plaintiffs' pleadings, the plaintiffs sought an adjudication of the parties' rights to the land uncovered by reliction in the nature of a declaratory judgment. The pretrial statement indicated that the issue to be litigated was "the accretion of land rights resulting from the lowering of the water level at Wolf Lake and the title to property which has been uncovered by the lowering of the water level. * * * The issue is who has the riparian rights and at what point did these riparian rights vest."

In view of the issues raised in the pleadings and pretrial statement, and the correct finding of the trial court that the lake is pear-shaped, we hold that it is incumbent upon the trial court to decide these issues according to the rule of law applying to a pear, irregularly-shaped lake.

The proper method of determining the riparian rights of the parties in the lake uncovered by reliction of pear-shaped Wolf Lake is to divide the relicted land in proportion to the shoreline owned. *Weisenburger v Kirkwood, supra.* In determining the applicable shoreline for the proper application of this method, cognizance should be taken of the rule of *Bauman v Barendregt, supra,* that courses and distances in a description in a deed yield to natural and ascertainable objects such as the shoreline of the lake. The proper shoreline herein is ascertained by determining the shoreline at the time that the lake and surrounding land was patented by the United States Government to the State of Michigan. The common boundary between plaintiffs and defendants is the only boundary to

be determined in this case as they are the only parties to this suit.

In view of the disposition taken on the afore-mentioned issues, we find it unnecessary to discuss the other issues raised by the parties.

Affirmed in part, reversed in part and re-manded. No costs, neither party fully prevailing.

All concurred.