WOOD v DENTON

1. Boundaries—Adverse Possession—Acquiescence—Limitation of Actions.

   The doctrine of acquiescence in actions for recovery or possession of land is applicable only when an agreed line is the product of a bona fide controversy as to the boundary, or the line is acquiesced in for the statutory period of 15 years.

2. Boundaries—Acquiescence—Agreed Boundary Lines—Evidence.

   A judgment in a boundary dispute granted on the basis of acquiescence was erroneous where the evidence showed no discussions and no agreement as to where the line was located and there was never any agreement as to where the line lay.

3. Adverse Possession—Boundaries—Hostile Possession.

   A claimant's possession must be actual, open, notorious, continuous, and hostile for the statutory period of 15 years for the acquisition of title by adverse possession; where no objections were made to the use of the land the requisite element of hostility was lacking.

4. Easements—Prescriptive Easements—Mutual Use—Hostile Use.

   Mutual use of an area will not mature into a prescriptive easement until the mutuality has ended and the adverse and hostile use continues for the statutory period of 15 years.

5. Adverse Possession—Easements—Hostile Use—Mutual Use.

   A claim by adverse possession begins at the time the claimant or his predecessor in title first puts the titleholders on notice that the claim is adverse and hostile; acts consistent with mutual use of a disputed area for easement purposes do not put the titleholder on notice that the use was adverse and hostile.

Appeal from Kent, John H. Vander Wal, J.

References for Points in Headnotes
[1-3] 12 Am Jur 2d, Boundaries §§ 77-84.
[4, 5] 25 Am Jur 2d, Easements and Licenses §§ 54-55, 119.

Submitted Division 3 January 8, 1974, at Grand Rapids. (Docket No. 16099.) Decided May 29, 1974.

Complaint by Raymond J. Wood and Betty J. Wood against Jack Denton and others for a determination of title to a strip of land lying between their properties. Judgment for plaintiffs. Defendants appeal. Reversed and remanded.

*Howard & Falkinburg,* for plaintiffs.

*Mohney, Goodrich & Titta, P. C.,* for defendants.

Before: R. B. BURNS, P. J., and BRONSON and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. In this appeal we are again called upon to decide the outcome of one of those senseless little wars undertaken by one neighbor against another over a piece of land lying along the boundary between their properties. Both pieces of property are residential in nature and are located on College Avenue in Grand Rapids. Plaintiffs' property lies to the north of defendants' property, with the exception of a ten-foot-wide strip of land running along the rear or eastern boundary of defendants' property. The purpose this strip of land running across the rear of defendant's property is to provide an access route from plaintiffs' property to the alley which runs along the southern boundary of defendants' property. Fee title to this strip of land is held by plaintiffs. Approximately ten feet to the west of this strip of land lies defendants' garage, which faces on the alley. It is a portion of this area lying between the defendants' garage and the ten-foot

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

access strip owned by plaintiffs that is the subject of this appeal.

Plaintiffs acquired their property from Edward and Rosaline Duba by virtue of a warranty deed executed on June 26, 1970. The Dubas acquired title to the property by means of a deed from Westside Federal Savings Association executed on February 8, 1956. Westside Federal acquired its interest to the property by a trustees' deed from the trustees of the estate of William H. Kinsey, dated November 15, 1954. While the Dubas did not acquire title to the land until 1956,[1] they had lived on the property between 1944 and 1956 as lease-hold tenants.

Defendants Denton are vendees of the property on which they now reside under a land contract executed by Alvin and Shirley Kolenda on November 10, 1959; defendant Henrietta Heetderks and the estate of Henry Heetderks now are the holders of the vendors' interest to that land contract. The Kolendas acquired their property in 1944.

The facts are surprisingly uncontroverted as to the use of the disputed area. Duba testified that during the period from 1944 to 1970 he used the land within two to three feet of defendants' garage, primarily for the purpose of making the access to his garage from the alley easier. Duba indicated that he cut down weeds, shoveled snow and put down stone and gravel on two unspecified occasions in the disputed area. Duba at all times thought that the property line was within two or three feet of the Denton garage. While no one ever objected to his cutting across this area to get to his

---

[1] While there was some mention of a land contract entered into between the Dubas and Westside Federal in 1954, there is insufficient evidence in the record to establish that the Dubas' interest was anything more than a leasehold interest prior to the deed of February 8, 1956.

garage, neither did he object to the fact that Denton and Kolenda used that area to turn their vehicles around and park their automobiles and trucks overnight, even though he knew they made such use of it. Duba acknowledged that at no time did he discuss with either Denton or Kolenda the question of where the property line was actually located.

Kolenda's testimony was in a similar vein. He too acknowledged that no discussion or dispute over the location of the boundary line ever took place with Duba. Kolenda did, however, testify that he always believed that he owned all the property back to the platted ten-foot access strip, and that he used the disputed area to store certain equipment used in his business, to park his truck overnight and to turn his truck around. Kolenda, while not disputing that Duba may have cut some weeds and placed some gravel in the disputed area, denied that he knew that Duba had undertaken these actions. Kolenda further indicated that he cut weeds and shoveled snow from that area and that his children played in that area.

Denton's testimony was to the same effect as Kolenda's, except that he also indicated that he had told the Duba children to refrain from using the area. Denton did, however, indicate that he had at no time mentioned the subject to either of the adult Dubas.

For some reason not apparent on the record, this peaceful co-existence of some 26 years was broken soon after the Woods moved in. In July of 1970 the Dentons erected what can only be called a "spite fence" along the record boundary between their property and the ten-foot access strip. This action precipitated Woods' bringing of this action to determine title to the disputed area. Plaintiffs

claimed title to the disputed area. Plaintiffs claimed title to the disputed area on the theories of adverse possession, prescriptive easement and acquiescence. On the basis of the testimony herein set forth, plus the testimony of the surveyor who indicated that the gravel from plaintiffs' driveway encroached into the disputed area some nine feet at the alley end and five feet at the north end, the trial court, sitting without a jury, entered judgment in favor of plaintiffs on the theory of acquiescence, and ordered defendants to execute a quitclaim deed conveying the above described trapezoidal area encompassed by the surveyor's findings. From that judgment and order defendants appeal.

As noted above, the trial court granted judgment in favor of plaintiffs on the basis of acquiescence. This was error. The learned trial judge has failed to differentiate the mere act of acquiescence from the doctrine of recovery known as acquiescence. As stated in *De Hollander v Holwerda Greenhouses,* 45 Mich App 564, 567; 207 NW2d 187, 188 (1973):

> "It is well settled that the doctrine of acquiescence is applicable only when the agreed line is the product of a bona fide controversy as to the boundary, or the line is acquiesced in for the statutory period. *Booker v Wever,* 42 Mich App 368, 373–374 [202 NW2d 439] (1972); *Weisenburger v Kirkwood,* 7 Mich App 283 [151 NW2d 889] (1967); *Jackson v Deemar,* 373 Mich 22 [127 NW2d 856] (1964); *Johnson v Squires,* 344 Mich 687 [75 NW2d 45] (1956); *Renwick v Noggle,* 247 Mich 150 [225 NW 535] (1929); *Hanlon v Ten Hove,* 235 Mich 227 [209 NW 169] (1926); *Phelps v Brevoort,* 207 Mich 429 [174 NW 281] (1919)."

The touchstone of the application of the doctrine of acquiescence is the existence of an *agreed line or boundary.* Only when there has been some agreement, whether tacit or overt, as to the loca-

tion of the boundary does the question of acquiescence become important. It is obvious from the evidence herein that there was never any agreement as to where the line lay. It is uncontroverted that defendants and their predecessors in title believed that their eastern boundary was located along the actual recorded line, while plaintiffs' predecessors in title believed that the line lay some seven to eight feet west of the actual line. It is further uncontroverted that at no time was there any discussion as to the location of the line, let alone any agreement as to where it was located. To the extent that the trial court's decision was based upon the doctrine of acquiescence, it was clearly erroneous.

The question thus becomes whether, despite the trial court's language which seems to indicate that he was deciding the matter on the theory of the doctrine of acquiescence, the trial court reached the right result but relied upon the wrong theory. It is clear that the court's result was not supportable under the theory of adverse possession. To acquire title by adverse possession the claimant's possession must be actual, open, notorious, continuous and hostile for the statutory period, in this case 15 years. *Bean v Bean,* 163 Mich 379; 128 NW 413, (1910), *Ennis v Stanley,* 346 Mich 296; 78 NW2d 114 (1956), MCLA 600.5801; MSA 27A.5801. Even assuming *arguendo* that the use of the disputed area by plaintiffs' predecessors in title, the Dubas, was actual, open, notorious and continuous, Duba's own testimony establishes that it was not hostile. Clearly, if defendants' title to the disputed area is contingent upon objecting to the Dubas' use, so too is the Dubas' claim subject to the same standard. Since Duba testified that he made no objection to the use made by Kolenda and Denton

of the disputed area, it cannot be said that the requisite element of hostility existed. In other words, one who asserts he has title to the land is under the same obligation to assert that claim if he is to be said to hold the property adversely to the rights of the titleholder. It should further be noted that since there was no evidence that the Dubas' predecessors in title ever made any claim to the disputed area, the date of the commencement of the statutory period of 15 years would be the date the Dubas acquired title to the land, February 8, 1956. It is thus clear that the statutory period had not run as of the date defendants Denton erected the fence, July of 1970.

For the same reasons the claim of a prescriptive easement must fail. There is ample authority for the proposition that mutual use of an area will not mature into a prescriptive easement until the mutuality has ended and the adverse and hostile use continues for the statutory period. *Wilkinson v Hutzel,* 142 Mich 674; 106 NW 207 (1906); *Hopkins v Parker,* 296 Mich 375; 296 NW 294 (1941); *Worden v Assiff,* 317 Mich 436; 27 NW2d 46 (1947); *Barbaresos v Casaszar,* 325 Mich 1; 37 NW2d 689 (1949); *Banach v Lawera,* 330 Mich 436; 47 NW2d 679 (1951). Again Duba's testimony clearly evidences that he at no time voiced an adverse or hostile claim of right to use the area such as would place defendants on notice that Duba felt his use was anything other than permissive in nature. Nor can we say that the mere fact that Duba placed gravel and stone on the disputed area on two unspecified occasions was so inconsistent with the mutual use of the area that such would place defendants on notice that his claim was adverse and hostile. There is again the further problem that since there was no indication in the

record that Dubas' predecessors in title ever made a claim of right to use the disputed area for easement purposes, any claim of right on Duba's part to use the disputed property as an easement, even if the claim was adverse and hostile, would arise at the time he secured fee title to the property which is now owned by plaintiffs. As noted above, even if the claim was construed to be adverse and hostile, the statutory period had not yet run.

It is clear from the record before us that plaintiffs failed to prove any theory of ownership or claim of right which would defeat defendants' record title to the area. The trial court was thus clearly erroneous in granting judgment in favor of plaintiffs.

Reversed and remanded for such orders as are consistent with this opinion. Costs to defendants.

All concurred.