# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN B. MACMILLAN,

        Plaintiff/Counterdefendant-
        Appellant,

v

S & G HOLDINGS, LLC,

        Defendant/Counterplaintiff-
        Appellee.

UNPUBLISHED
June 26, 2018

No. 337304
Oakland Circuit Court
LC No. 15-150518-CH

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition in this boundary-line dispute involving neighboring properties on a lake. Plaintiff had alleged claims of adverse possession, acquiescence, and trespass, which were all summarily dismissed. Defendant filed a counterclaim, raising allegations sounding in trespass, nuisance per se, nuisance in fact, and quiet title. The claim of nuisance per se was dismissed as part of a failed motion for partial summary disposition filed by defendant regarding that particular claim. The remaining counts contained in the counterclaim went to bench trial, where the trespass and nuisance-in-fact claims were involuntarily dismissed as time-barred. But the court quieted title in favor of defendant with respect to the disputed boundary area, considering that surveys showed that defendant held legal ownership to the area and that plaintiff no longer could advance the adverse possession and acquiescence claims due to the earlier summary disposition ruling. We conclude that the trial court improperly weighed the evidence, made credibility assessments, and resolved evidentiary conflicts in granting defendant's motion for summary disposition under MCR 2.116(C)(10). Accordingly, we reverse and remand for further proceedings.

## I. FACTUAL OVERVIEW

Plaintiff has owned his house on the lake since 1994. Adjacent to plaintiff's property on the north side of his parcel is defendant's property, with the boundary line between the respective sides of the houses and lots being the subject of the dispute. Lake Orion is located to the east of both properties and the roadway accessing the properties lies to the west. Defendant is a limited

-1-

liability company that was formed in 2011 by Gregory and Sheryl Haase, husband and wife, for purposes of operating a property rental business, and defendant purchased the lake house in October 2012, inheriting a tenant from the seller who had also utilized the property as a rental unit. The tenant later died, and the Haases developed a plan to raze the home and build a new house on the site, where they would reside after construction was completed.[1] In 2014, the Haases obtained a boundary and topographic survey prepared by Kieft Engineering, Inc. The survey showed partial encroachments on defendant's property – a deck and attached ramp connected to the north side of plaintiff's house, which crossed the surveyed boundary line. This discovery set off a dispute between the Haases and plaintiff concerning the true boundary line, eventually leading to the litigation.

Plaintiff's claim of adverse possession was predicated on the alleged existence of the encroaching structures for the requisite statutory period,[2] as well as his maintenance of the disputed strip of land, from the road down to the lake, by way of planting flowers, weeding, fertilizing, watering, tree trimming, and general landscaping activities. Plaintiff's claim of acquiescence was based on various landmarks and structures in the disputed area that allegedly had been treated as forming the boundary line between the parcels, i.e., railroad ties near the street, a rising stone retaining wall, beyond the northern edges of the deck and ramp, past the back of the shed, and then to the lake to a board at the seawall.[3] The line that plaintiff claims has been treated as the boundary between the lots is several feet north of the boundary line identified in the 2014 Kieft survey. There was no dispute that the surveyed line favored defendant's position regarding the exact location of the boundary between the properties, which is why plaintiff was forced to rely on the doctrines of adverse possession and acquiescence to claim title.

## II. PROCEDURAL HISTORY

As indicated, plaintiff filed suit, alleging the claims of adverse possession, acquiescence, and trespass, with the trespass count being premised on a boundary created by application of adverse possession and acquiescence principles, along with the Haases' placement of stakes and removal of trees and plant life on plaintiff's side of that boundary. Defendant answered and filed a counterclaim, asserting allegations sounding in trespass, nuisance per se, nuisance in fact, and quiet title. In support of the trespass counterclaim, defendant cited the encroachments reflected in its 2014 survey. And defendant alleged that a survey completed at plaintiff's direction in April 2005 did not show any encroachments, "evidencing that the encroachments did not occur until after April 2005," which allegation was plainly an attempt by defendant to undermine the adverse possession and acquiescence claims in light of plaintiff's need to establish a 15-year

---

[1] At the time of the litigation, demolition of defendant's house had yet to be started and the house sat empty.

[2] In addition to the deck and ramp, plaintiff argued that a shed located down by the lake also partially encroached on defendant's property and that the shed was there when plaintiff moved into his home in 1994, thereby lending further support for his claim of adverse possession.

[3] There is a significant decline in the land from the street down to the lake.

period to support those claims.[4]  Defendant's nuisance-in-fact counterclaim was based on the structural encroachments, allegedly representing plaintiff's unlawful intrusion onto defendant's property and interfering with defendant's use and enjoyment of its land.  The nuisance-per-se counterclaim concerned allegations that plaintiff had failed to obtain the requisite permits from the township and violated township ordinances relative to constructing the deck and the ramp. And defendant sought a quiet-title ruling in its favor regarding the disputed boundary area.

Defendant filed a motion for summary disposition under MCR 2.116(C)(10) in regard to plaintiff's complaint, and it filed a motion for partial summary disposition under MCR 2.116(C)(10) with respect to the count in the counterclaim alleging nuisance per se.  As to the motion for summary disposition relative to plaintiff's complaint, the trial court granted the motion in a 19-page opinion and order.  With respect to the claim of adverse possession, the trial court separately examined the evidence regarding the shed, the deck/ramp, and maintenance of the disputed area.  In regard to the shed, the court indicated that plaintiff presented testimony from former neighbors that the shed had existed on the property for more than 27 years.  The trial court observed that the 1994 mortgage survey clearly identified a shed near the seawall, but the survey did not reflect that the shed encroached on the line between the two properties.  The court further stated that plaintiff's two 2005 surveys and defendant's 2014 survey showed the shed, but they revealed, at most, that the shed only butted up against the property line between the lots; the shed did not cross the line.  Accordingly, the trial court found, as a matter of law, "that even though the shed existed on [plaintiff's] property for the statutory period, its existence was not open, notorious, or exclusive because it merely butts up against the boundary line and does not appear to cross it."

The trial court next tackled the deck/ramp, first indicating that the 1994 mortgage survey showed only a four-foot-wide porch, along with "a buffer between the end of the porch and the boundary line," so there was no encroachment.[5]  According to the court, the two 2005 surveys showed neither a deck nor a ramp connected to plaintiff's house and thus certainly no encroachment of any kind, while the 2014 survey clearly depicted a square deck and rectangular ramp that crossed the boundary line.  The trial court next observed and ruled:

[Plaintiff] presents testimony that the deck/ramp existed when he purchased the property in 1994; he repaired it in 1998; and he replaced i[t] in 2007/2008. Having reviewed the documentary evidence, this [c]ourt finds – as a

---

[4] Four surveys were presented to the trial court.  There was the 2014 Kieft survey obtained by defendant, plaintiff's April 2005 survey, which was prepared by Christopher Enright Architects, a June 2005 survey by Richmond Engineering, Inc., that had also been prepared for plaintiff, and a 1994 survey that was part of a mortgage report undertaken when plaintiff purchased his property.

[5] The parties and the court used the terms "deck" and "porch" interchangeably in regard to the same structure.  For purposes of this opinion, we shall refer to the "deck" unless "porch" is used in quoted materials.

matter of law – that the deck and ramp was [sic] not actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. The documentary evidence establishes that the earliest that the deck and ramp crossed into the disputed area was 2007/2008, which is less than the statutory period. Further, the documentary evidence establishes that the deck/ramp did not exist in 2005.

Finally, with respect to adverse possession and maintenance of the disputed strip of land, the trial court ruled:

> [Plaintiff] alleges that he maintained the disputed area. [Defendant] directs this Court's attention to [plaintiff's] testimony that he has been staying at his girlfriend's residence for the last few years and photographs showing that the disputed area is not currently being maintained. Having reviewed the documentary evidence, this Court finds – as a matter of law – that [plaintiff] failed to present documentary evidence to establish that his maintenance of the disputed area was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. While this [c]ourt recognizes that [plaintiff] testified that he maintained the disputed area, it finds that it was not exclusive as far as preventing [defendant] or the prior owners from using it as well.

In sum, the trial court granted summary disposition in favor of defendant on plaintiff's claim of adverse possession for the reasons expressed above concerning the shed, deck, ramp, and maintenance of the disputed area.

With respect to plaintiff's claim of acquiescence, the trial court also rejected that theory of ownership, ruling as follows:

> [Plaintiff] alleges that the parties *treated* a particular boundary line as the property line; however, he relies solely on his own testimony that he treated those landmarks as the boundary without presenting any documentary evidence to support that [defendant] or [the] Ligorelli[]s (the previous owners of [defendant's] property) *treated* those same landmarks as the boundary marks since 1994 when he purchased the property. As such, this Court finds – as a matter of law – that [plaintiff] failed to establish [the] elements for acquiescence.

Finally, the trial court summarily dismissed plaintiff's trespass claim, given the court's rulings regarding adverse possession and acquiescence. The trial court next issued an opinion and order with regard to defendant's partial motion for summary disposition on its counterclaim of nuisance per se. The court accepted plaintiff's argument that he was actually entitled to summary disposition concerning the nuisance-per-se counterclaim, where the claim was barred by the statute of limitations.

Plaintiff filed a motion for reconsideration relative to the trial court's order granting summary disposition in favor of defendant on plaintiff's complaint. The trial court issued a

written opinion and order, denying the motion. The court first addressed plaintiff's argument that Mr. Haase testified in his deposition that the shed encroached on defendant's property because its soffit and overhanging roof crossed the surveyed boundary line, and there was no dispute that the shed had been in the same location since before plaintiff purchased the house in 1994. The trial court rejected plaintiff's argument, stating that it had previously "found that the alleged existence of the shed's soffit extending into [defendant's] property did not meet the adverse possession elements because it was not hostile, notorious, or exclusive."[6]

The trial court next entertained plaintiff's contention that there was evidence that the deck had continuously existed for the statutory period, even if it was rebuilt, remodeled, or repaired in 2007 or 2008, as the cantilever boards (projecting beams attached to and supported by the house) were not removed at that time and extended over the property line. The trial court reiterated its earlier findings that the 1994 mortgage survey showed a deck, but not one that crossed the surveyed boundary line, that the 2005 surveys simply did not reveal any deck, and that the 2014 survey showed an encroaching deck. The trial court then ruled that it had previously considered the testimony being cited by plaintiff in his motion for reconsideration "and compared it to the surveys when it . . . issued the" earlier opinion and order on defendant's motion for summary disposition. Therefore, according to the court, plaintiff failed to demonstrate a palpable error, such that a different ruling was required.

The trial court next addressed plaintiff's argument that there was deposition testimony that he had exclusively and continuously maintained the boundary area in dispute for the entire period of his ownership and that the adverse possession element of "continuousness" did not require evidence that the maintenance was "constant." The trial court found that plaintiff had not demonstrated palpable error. The court expressed that it was remaining with its prior ruling on the matter, which had focused on plaintiff residing mainly with his girlfriend for the last few years, photographs showing that the area was not currently being maintained and appeared not to have been maintained for years, and on the absence of evidence that plaintiff prevented defendant or defendant's predecessors from maintaining the area.

Finally, in regard to reconsideration of the trial court's acquiescence ruling, the court addressed plaintiff's argument that a passive or tacit agreement to treat a line as the actual boundary line suffices under the law, without need to show an express agreement between neighbors on the matter, and that plaintiff submitted deposition testimony establishing a passive or tacit agreement regarding a boundary line formed by the location of landmarks and structures.

---

[6] As discussed earlier, the trial court in its original opinion and order found "that even though the shed existed on [plaintiff's] property for the statutory period, its existence was not open, notorious, or exclusive because it merely butts up against the boundary line and does not appear to cross it." Contrary to its statement in the opinion and order on plaintiff's motion for reconsideration, the court did not frame the ruling in terms of an insufficient encroachment by the soffit and overhanging roof for purposes of the elements of adverse possession. Thus, the court effectively modified its previous ruling concerning the shed.

The court agreed with plaintiff that a passive or tacit agreement can support a claim of acquiescence under the caselaw. The trial court concluded, however, that plaintiff failed to present "any evidence to establish an actual, a tacit, or a passive agreement between [defendant] or its predecessors as to a 'recognized' boundary line between the parties or that [defendant] (or its predecessors) did not use the disputed area." In sum, the motion for reconsideration was denied.

Following the bench trial on the three remaining counts in defendant's counterclaim, the trial court issued a written opinion, order, and judgment. The court concluded that defendant's trespass and nuisance-in-fact counterclaims were both time-barred. The trial court did, however, quiet title in favor of defendant relative to the disputed boundary area, adopting as the proper line the one reflected in the 2005 surveys. The court further indicated that plaintiff's ramp, deck, and shed overhang encroached on defendant's property, and the court ordered these structural encroachments to be removed. Plaintiff appeals as of right.[7]

## III. ANALYSIS

### A. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

We review de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). With respect to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), explained:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

---

[7] Defendant does not cross appeal the trial court's rulings regarding the rejected counts in its counterclaim.

## B. ADVERSE POSSESSION[8]

### 1. GENERAL PRINCIPLES

The underlying statutory basis that gives rise to the doctrine of adverse possession is found in MCL 600.5801, which provides, in pertinent part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

Ordinarily, an action for recovery or possession of land must be brought within 15 years after it accrues. MCL 600.5801(4); *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993). The *Kipka* panel, examining the principles of adverse possession, observed:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession,

---

[8] Plaintiff presents a preliminary argument that the trial court failed to consider deposition transcripts and exhibits that plaintiff attached to an affidavit and filed separately from his response to defendant's motion for summary disposition, even though the affidavit and attachments were part of his overall response to the motion for summary disposition. In support, plaintiff cites MCR 2.302(H)(1)(a), which provides that "[i]f discovery materials are to be used in connection with a motion, they must either be filed separately or be attached to the motion or an accompanying affidavit[.]" In the trial court's opinion and order, it noted that plaintiff had directed the court's attention to 590 pages of documentary evidence attached to the affidavit, but the materials had not been attached to plaintiff's response to defendant's motion for summary disposition. The trial court acknowledged MCR 2.302(H)(1)(a) and stated that plaintiff had not provided a judge's copy of the affidavit and attachments. Defendant maintains that, despite the court's remarks, there is no indication that the court did not take the materials into consideration. We tend to agree with defendant. While the trial court commented in several footnotes about the fact that plaintiff attached the evidence to the affidavit but not to the summary disposition response, it appears from reading the opinion and order on the motion for summary disposition, as well as the opinion and order on plaintiff's motion for reconsideration, that the court took into consideration the documentary evidence attached to the affidavit, including plaintiff's deposition transcript. The court concluded, mistakenly so, that plaintiff's documentary evidence was insufficient to create a genuine issue of material fact on the various issues. To the extent that the trial court failed to consider the evidence as claimed by plaintiff, our ultimate holding in this opinion effectively renders the matter moot.

one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [*Kipka,* 198 Mich App at 439 (citations omitted).]

In *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006), this Court further explained the doctrine of adverse possession, stating:

> Other cases additionally indicate that the possession must be hostile and under cover of a claim of right. *McQueen v Black*, 168 Mich App 641, 643; 425 NW2d 203 (1988), quoting *Connelly v Buckingham*, 136 Mich App 462, 467-468; 357 NW2d 70 (1984). "The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will[;]" rather, hostile use is that which is "inconsistent with the right of the owner, without permission asked or given," and which use "would entitle the owner to a cause of action against the intruder." *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976).

Successive periods of adverse possession by different parties can be joined or "tacked" to satisfy the 15-year statutory period, but only if there was privity of estate. *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001).

Finally, in *Gorte v Dep't of Transp*, 202 Mich App 161, 170-171; 507 NW2d 797 (1993), this Court studied the role of "intent" and "mistake" in regard to a claim of adverse possession, explaining:

> Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession. By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. As noted by this Court . . ., it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken. . . . [P]laintiffs in this case appear to have intended to hold to particular boundaries, but also believed that the boundary represented the true line. Plaintiffs therefore fall within the second group of adverse possessors in that they respected a line that they believed to be the true boundary, but which proved not to be the true boundary. [Citations omitted.]

## 2. DISCUSSION

### (a) THE SHED

With respect to the shed, plaintiff maintains that the trial court erred in finding that the shed did not cross the surveyed boundary line, where Mr. Haase testified that the shed encroached on defendant's property because the soffit and overhanging roof crossed the line, which could be seen in an enlarged version of the 2014 Kieft survey.[9]  Plaintiff additionally argues that the shed has been in the same location since it was constructed back in the late 1980s.[10]  Therefore, according to plaintiff, the encroaching "shed did constitute an open and visible improvement in the disputed area for in excess of the fifteen (15) year statutory period."

Plaintiff's argument fails to recognize that the trial court, in the opinion and order on plaintiff's motion for reconsideration, varied its earlier ruling regarding the shed (see footnote 6 of this opinion), concluding that the overhang "did not meet the adverse possession elements because it was not hostile, notorious, or exclusive."  The court had originally found that the shed did not encroach at all on defendant's property.  Plaintiff's position appears to be that because the overhang crossed the surveyed boundary line for the requisite 15 years, all of the elements of adverse possession were necessarily established given the structural and immovable nature of the overhanging roof.  We read the trial court's opinion to indicate that the encroachment, considering its nature, was inadequate to give defendant and its predecessors clearly-visible notice of an invasion of their property rights, implicating the "notorious" element of adverse possession.  We note that any encroachment was not on the land itself; it would be more in the way of an encroachment on air space, similar to tree branches hovering over a neighbor's property.

There is simply no legal or factual basis supporting the court's determination that, as a matter of law, the "hostile" and "exclusive" elements of adverse possession were not shown *as to the permanent, fixed-in-position overhanging roof.*  We do hold that there exists a genuine issue of material fact on whether the encroaching soffit and overhanging roof satisfy the "notorious" element of adverse possession.[11]  And, on remand, the parties and court may explore whether adverse possession even applies to a structure that solely occupies neighboring air space.

---

[9] Mr. Haase indeed testified consistently with plaintiff's claims, although defendant asserts in its appellate brief that a shed encroachment cannot be seen in the 2014 survey.  Defendant's assertion cannot avoid the effect of Mr. Haase's testimony for purposes of our analysis.

[10] Plaintiff testified in his deposition that the shed was in its current location when he moved to the house in 1994.  And a neighbor testified that he assisted plaintiff's predecessor in interest in putting up the shed sometime in the late 1980s.

[11] To be clear, although we are ruling that there was evidence of an encroachment by the shed based on Mr. Haase's testimony, as ultimately recognized by the trial court, defendant is not precluded on remand from arguing and presenting evidence to the contrary.

## (b) THE DECK AND RAMP

The trial court appeared to accept the surveys as definitive proof regarding issues concerning the deck and ramp, ignoring conflicting documentary evidence. The court concluded that the 1994 mortgage survey showed a deck in the area where the current deck is located, but the survey indicated that the deck was within the boundaries of plaintiff's property – there was no encroachment. The court determined that neither a deck nor a ramp existed in 2005, because the two 2005 surveys did not show any structure attached to the north side of plaintiff's house. The trial court found that, based on the documentary evidence, the earliest that a deck or ramp existed and crossed into the disputed boundary area was 2007 or 2008; therefore, the 15-year statutory period was not satisfied. We shall now examine the pertinent documentary evidence regarding the deck and ramp.

Plaintiff testified that in 2007 or 2008, he and a friend, Craig Kempenaar, rebuilt the deck and ramp located on the north side of plaintiff's house.[12] Plaintiff explained that the floor boards and stringers for the deck and ramp were all replaced, as well as the two supporting posts for the deck. He testified that the existing posts for the deck were cut at the ground level, leaving the buried bases of those posts in the ground. Plaintiff stated that, therefore, the two new posts were sunk in different spots; he did not know whether the new posts were further away from his house than the old posts. Plaintiff testified that railings were added to the deck and ramp as part of the project and that no railings had previously existed. He claimed that prior to rebuilding the deck and ramp in 2007 or 2008, the existing ramp had been similar in shape and size to the rebuilt ramp.[13] According to plaintiff, the new deck was "[s]lightly bigger" than the previous deck. When asked what remained of the old deck on completion of the project, plaintiff testified, "There are some beams that appear to be cantilevered from the house and those remain." Plaintiff indicated that those cantilevered beams – he believed there were two – were built into the structure of the house and were all that was left of the old deck. Plaintiff explained that the ramp was completely rebuilt, with nothing remaining from the old ramp. He testified that the rebuilding project was done all at one time, meaning that after the old deck and ramp were removed, they immediately proceeded to build the new deck and ramp.

With respect to the 1994 mortgage report survey, plaintiff agreed that the only structure shown in the survey was a 4' x 4' deck attached to the north side of his home. Plaintiff testified, however, that the deck and ramp were both present in 1994 and in their current location. He indicated that the stone retaining wall had been in place when he moved to the property in 1994 and that the old ramp went right alongside the wall as currently depicted in the photographs. In the deposition, plaintiff identified a 2002 photograph that showed a deck on the north side of his house, which was the same deck that had existed in 1994, along with part of the ramp, which had

---

[12] Plaintiff also has a deck on the south side of his home, which is much larger.

[13] Later in his deposition, plaintiff stated that he could not recall whether the new ramp was the same width as the old ramp, but he then testified that they were approximately the same size.

been in a dilapidated condition for years.[14]  Plaintiff also identified a 2006 photograph that showed the deck and what was left of the ramp.  With respect to the two 2005 surveys, which plaintiff had obtained for purposes of seeking zoning approval to remodel his house, plaintiff acknowledged that they showed neither a deck nor a ramp on the north side of his home; however, the surveys were inaccurate according to plaintiff, as both structures existed at the time.

In his deposition, plaintiff's friend Kempenaar testified that before the deck and ramp were rebuilt, they were so dilapidated that he believed they were not safe to walk on, although a person could navigate his or her way up the ramp to the deck, but it was "sketchy."  There had been no railings in place for the deck or ramp according to Kempenaar.  He described the ramp as consisting of mere remnants of wood, with boards missing, rotting, or covered with moss.[15] Kempenaar testified that he could not recall how the deck changed dimensionally when it was rebuilt.  He stated, "I think it was about four feet, maybe five.  I don't know."  It is not clear from Kempenaar's testimony whether those measurements pertained to the new deck or the old deck. He indicated that he believed that the old ramp, what was left of it, had been wider than the newly-built ramp.  Kempenaar did not remember whether they removed the old deck posts from the ground and put the new posts in the same exact locations, or whether they left the bases of the old posts in the ground and placed the new posts adjacent to the old locations.  He testified that he could not recall how long it took to do the demolition and rebuild the deck and ramp. Kempenaar indicated that he had been going over to plaintiff's house since 1998 or 1999 and that the deck and ramp existed at that time, as well as the stone retaining wall.  He stated that he believed it was earlier than 2007-2008 that the deck and ramp were rebuilt, but he was unsure.

A neighbor who lived to the north of defendant's house, Floyd Provo, testified that when plaintiff moved into the neighborhood in 1994 there was only a very tiny deck or platform jutting out of the north side of plaintiff's house at a doorway, extending about 18 inches, and there was no railing, stairway, or ramp.  Provo found it to be dangerous.  Provo recalled seeing a nice new deck and ramp roughly ten years before his 2016 deposition.

As reflected in the above testimony, despite the two 2005 surveys that did not show a deck or ramp, there was evidence that a deck and ramp existed at that time.  Therefore, to the extent that the trial court ruled, as a matter of law, that no deck or ramp existed in 2005, it erred. Surveys do not trump other forms of documentary evidence as a matter of law when assessing a motion for summary disposition under MCR 2.116(C)(10), which appears to be the trial court's belief.  There was evidence that a deck and ramp had been in place on the north side of plaintiff's property since 1994.  A slightly closer question concerns whether the deck and/or ramp had encroached on defendant's property prior to being rebuilt in 2007 or 2008.  There is no dispute that the rebuilt deck and ramp encroached on defendant's property, but that encroachment alone

---

[14] Plaintiff testified that he had periodically knocked off rotted ramp boards over the years.

[15] Kempenaar testified that he and plaintiff hung some string along the staked line based on the 2014 survey and that the string/line pretty much ran up the center of the rebuilt deck and ramp.

would not suffice to establish adverse possession because the 15-year statutory period could not be established.

The two 2005 surveys reveal that the distance from the northwest corner at the front of plaintiff's house is merely 1.7 feet from the surveyed boundary line and gradually widens to 5.1 feet at or near the back of the house, forming a triangular area. The current deck is about midway between the front and the back of plaintiff's house, with the ramp extending from the deck to the very front of the house. And defendant's 2014 survey shows the boundary line running through and slightly north of the middle of the deck. In light of this information contained in the three surveys and the testimony by plaintiff and/or Kempenaar that the ramp existing at the time of the construction project had been approximately the same size or even wider and in the same location than the encroaching rebuilt ramp and that the new encroaching deck was only slightly larger and in the same location as the previously-existing deck, there was sufficient evidence to create a genuine issue of material fact regarding whether there were deck and ramp encroachments supporting the elements of adverse possession for the requisite 15-year statutory period. With respect to whether the rebuilding project itself disrupted the running of the statutory period, the trial court did not reach the issue and minimally a question of fact would exist, considering the evidence of the cantilevered beams and the presence of plaintiff and Kempenaar actively working in the area during the construction.

## (c) MAINTENANCE OF DISPUTED BOUNDARY AREA

The trial court found, as a matter of law, that plaintiff failed to show that his maintenance of the disputed area was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. The court relied on testimony that plaintiff had resided mainly with his girlfriend for the last few years, photographs showing that the disputed area was not currently being maintained and appeared not to have been maintained for years, and on the absence of evidence that plaintiff prevented defendant or defendant's predecessors from maintaining the area. We now examine the relevant documentary evidence on the issue.

In his deposition, plaintiff testified to what he considered to be the recognized or treated boundary line between the properties since he moved to the lake in 1994 (railroad ties, stone retaining wall, beyond sides of ramp and deck, back of shed, piece of wood at seawall), indicating that he alone maintained and cared for the area on his side or south of this landmark-based line. With respect to this disputed area, plaintiff testified that he had planted Myrtle, pulled weeds, grew roses, and trimmed trees. He indicated that he watered the area, although not recently, and fertilized it in the early days. Plaintiff asserted that he had planted various lilies in the disputed area around the time he had moved into the house, which had now overgrown the area, even spreading north of the claimed boundary line. He also believed that he may have planted some small pines in the general area. Plaintiff claimed that for over 20 years he maintained the disputed area by taking care of the Myrtle, weeding, and trimming. He testified that defendant and its predecessors never once told him to stop, objected to, or complained about his maintenance and landscaping activities in the disputed area, nor did they ever perform such activities in the area. Plaintiff asserted that his neighbors over the years only maintained the area north of the line that was treated as the boundary line, never going beyond it. He further testified that while he was now staying mostly at his girlfriend's house, he still took care of maintaining

-12-

the area, claiming that he "would make special trips over there [lake house] to attend to" the maintenance. Plaintiff asserted that for the last "couple years" he was spending more time at his girlfriend's house than his house, but for the prior 20 years or so he had primarily resided at his house.[16]

Kempenaar testified that he spent a lot of time at plaintiff's home over the years and that plaintiff did quite a bit of yard work and maintenance, including on the north side of his house; however, Kempenaar could not state for certain that plaintiff did so specifically in the disputed area.[17] He testified that defendant's predecessors did nothing in between the houses or in the disputed area. Kempenaar was aware that Mr. Haase had "cut down some trees and so forth." He indicated that he did not know of anyone, before Mr. Haase, complaining about or objecting to plaintiff maintaining the north side of plaintiff's house.

A neighbor living in the house next to and south of plaintiff's property since 2011, Marycatherine Trescott, testified that until about five weeks before her July 2016 deposition, she had never seen plaintiff doing yard work or maintaining the area on the north side of his house.[18] Indeed, until Mr. Haase had a maintenance company come out and clear trees, brush, and overgrowth between defendant's and plaintiff's houses, Trescott did not even realize that a deck and ramp existed on the north side of plaintiff's home. When Trescott finally observed plaintiff doing maintenance in the disputed area, she described it as follows:

> I hear, like, a weed whacker going crazy in the front of the house next door. Highly unusual, by the way. And he's weed-whacking over by that deck, and I see all of a sudden these rose trellises go up. And they're haphazard. They're not even properly in the dirt, so they're not vertical; crazy. I'm thinking what the heck is he doing.

Trescott testified that since she moved to the location in 2011, plaintiff would stay at his house only about once every six weeks.

Mr. Haase testified that when his company, defendant, bought the house in 2012, the disputed area was so overgrown with trees and brush that you could not see plaintiff's deck or ramp. He further indicated that he hired a tree company to cut down several trees and clear brush because it was impossible to walk through the disputed area due to the overgrowth. Mr. Haase testified that he had done nothing else in the disputed area.

---

[16] Plaintiff indicated that he currently spends one night every week or two at his house on Lake Orion, otherwise he resides with his girlfriend at her home in Auburn Hills.

[17] Later in his deposition, Kempenaar testified that plaintiff did maintain portions of the disputed area. But, when confronted with the discrepancy, he stated that he knew only that plaintiff wacked weeds in the disputed area.

[18] Trescott indicated that plaintiff started a dispute with her and her husband over the boundary line between their lots.

We hold that the trial court erred in its ruling on this issue. Plaintiff moved into the house in 1994, so he could have potentially satisfied the 15-year period by 2009. Plaintiff's testimony reflected that he maintained the disputed area since 1994, engaging in landscaping activities of a type and frequency that would normally be associated with the nature of the physical environment existing between the houses. This evidence, if true, could establish possession of the disputed area that was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. See *Rose v Fuller*, 21 Mich App 172, 175; 175 NW2d 344 (1970) ("In order to support a claim of title by adverse possession, acts of possession must be open and of a hostile character, but it is sufficient if the acts of ownership are of such character as to indicate openly and publicly an assumed control or use such as is consistent with the character of the premises in question."). The trial court's reliance on evidence covering just the past few years, i.e., testimony that plaintiff resided mostly at his girlfriend's house and photographs of overgrowth in the disputed area, showed a failure to appreciate that an adverse possession claim based on maintenance of the area could have been established by 2009.

With respect to the trial court's finding that plaintiff's maintenance of the area "was not exclusive as far as preventing [defendant] or the prior owners from using it as well[,]" there was evidence that plaintiff's maintenance was exclusive for the statutory period, reflecting that, until Mr. Haase had the area cleared, no renter or owner of the neighboring property had ever maintained or landscaped the disputed area since plaintiff moved to the lake in 1994. If plaintiff's and Kempenaar's testimony is true that only plaintiff had maintained the disputed area, there would have been no need for plaintiff to actively "prevent" or "exclude" others from caring for the area, as they had never attempted to do so. The trial court's ruling to the contrary had no basis in law. A genuine issue of material fact existed in regard to whether plaintiff established the elements of adverse possession for the 15-year period relative to his maintenance of the disputed area.[19]

## C. ACQUIESCENCE

### 1. GENERAL PRINCIPLES OF ACQUIESCENCE

Under Michigan law, parties may acquiesce to a new property boundary line. *Walters v Snyder*, 239 Mich App 453, 456-457; 608 NW2d 97 (2000). "[A]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Mason v City of Menominee*, 282 Mich App 525, 529-530; 766 NW2d

---

[19] Defendant argues that plaintiff's limited activities in the disputed area "certainly [did] not []rise to clear and cogent proof that" the elements of adverse possession were established. First, we are addressing a motion for summary disposition, and thus plaintiff only had to submit evidence sufficient to create a genuine issue of material fact. Second, viewed in a light most favorable to plaintiff, a reasonable trier of fact could conclude that the evidence of plaintiff's activities in the disputed area were consistent with the character of the premises and at a level that ordinarily would be undertaken by an owner of such land.

888 (2009) (quotation marks and emphasis omitted). The three theories of acquiescence include: "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996). At issue here is the first theory – acquiescence for the statutory period. The statutory period for acquiring property by acquiescence is 15 years. MCL 600.5801(4); *Mason*, 282 Mich App at 529. A claim of acquiescence for the statutory period requires a showing that the property owners treated a boundary line as the property line for 15 years. *Walters*, 239 Mich App at 457-458; see also *Waisanen v Superior Twp*, 305 Mich App 719, 733; 854 NW2d 213 (2014); *Killips*, 244 Mich App at 260 ("The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line."). Our Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys. *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956).

"The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips*, 244 Mich App at 260. Unlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission. *Walters*, 239 Mich App at 456. In *Wood v Denton*, 53 Mich App 435, 439-440; 219 NW2d 798 (1974), this Court explained that "[o]nly when there has been some agreement, whether tacit or overt, as to the location of the boundary does the question of acquiescence become important." The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes. *Killips*, 244 Mich App at 260.

## 2. DISCUSSION

The trial court ruled that plaintiff failed to establish the claim of acquiescence as a matter of law, because there was no evidence that defendant or its predecessors treated the alleged boundary as the true property line; there was no agreement, express or tacit.

As noted earlier, plaintiff testified to what he considered to be the recognized or treated boundary line since he moved to the lake in 1994 (railroad ties, stone retaining wall, beyond sides of ramp and deck, back of shed, piece of wood at seawall), indicating that while no one had ever expressly agreed with him that this indeed was the boundary line, no one had ever attempted to stop him from conducting maintenance activities on his side of said line. And, according to plaintiff's testimony, no one other than himself had maintained the disputed area since 1994. Plaintiff testified that not until September 2014, which is when he and Mr. Haase began communicating by email and phone regarding the 2014 surveyed line, had he ever had a conversation with anyone regarding the property line between his lot and defendant's parcel. Kempenaar testified that he always assumed and it seemed obvious that the stone retaining wall formed part of the boundary line between the properties, although he never discussed the matter with plaintiff.

The trial court's ruling reflected a misunderstanding of the law of acquiescence and of the basic principles applicable to summary disposition under MCR 2.116(C)(10). There was documentary evidence sufficient to create a genuine issue of material fact regarding whether plaintiff and past owners or renters of defendant's property had treated the claimed boundary

line, as formed by landmarks and structures, as the true property line. Plaintiff, of course, testified that he had treated and acquiesced in the landmark-based boundary as being the true line. Although there was no evidence that defendant's predecessors-in-interest had expressly agreed to or acquiesced in the boundary line claimed by plaintiff, a reasonable inference arising from the evidence, as viewed in a light most favorable to plaintiff, was that a tacit or an implied agreement existed on the matter.

With respect to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), "the court's task is to review the record evidence, *and all reasonable inferences therefrom*, and decide whether a genuine issue of material fact exists to warrant a trial." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) (emphasis added). And the word "tacit" means "carried on without words or speech," or "implied or indicated (as by an act or by silence) but not actually expressed." *Merriam-Webster's Collegiate Dictionary* (11th ed). The testimony that plaintiff alone maintained and landscaped the disputed area, beginning in 1994 and until Mr. Haase had the disputed area cleared, and that the previous owners and renters of defendant's property had not done any landscaping or maintenance in the area for about 20 years, while never objecting to or complaining about plaintiff's activities, provided more than enough evidence to support a tacit agreement that the boundary line was located as claimed by plaintiff. See *Killips*, 244 Mich App at 260 (parties claiming acquiescence and their predecessors had actively used disputed area since about 1975 without any effort by the defendant to stop the usage). The evidence gave rise to a reasonable inference that the previous owners and possessors of defendant's property had treated the landmark-based line as the true boundary line. Therefore, a genuine issue of material fact existed with respect to plaintiff's acquiescence claim. Accordingly, the trial court erred in not allowing the acquiescence cause of action go to trial.

## IV.  CONCLUSION

Viewed in a light most favorable to plaintiff, there was sufficient evidence to create a genuine issue of material fact regarding the claim of adverse possession relative to the shed, deck/ramp, and maintenance of the disputed area by plaintiff. There was also sufficient evidence to create a genuine issue of material fact concerning the claim of acquiescence, which cause of action was based on an alleged boundary formed by certain landmarks and structures. Additionally, considering our rulings on adverse possession and acquiescence, we reinstate plaintiff's trespass claim that had been summarily dismissed. Finally, we vacate the trial court's judgment, entered after the bench trial, which quieted title in favor of defendant with respect to the disputed area and ordered plaintiff to remove the encroachments. On remand, a trial is to be conducted on the parties' competing claims of title.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause